# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARY VINCENT FOLEY, JR.,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 324414
Wayne Circuit Court
LC No. 13-010186-FC

Before: SAAD, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM.

Following a bench trial, defendant appeals as of right his convictions for first-degree murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without parole for the first-degree murder conviction and two years' imprisonment for the felony-firearm conviction. Because there was sufficient evidence to support defendant's convictions and defendant was not denied the effective assistance of counsel, we affirm.

The victim in this case, Zita Kvasys, was murdered at her home on October 30, 2012. The exact time of death was unknown, but, according to the evidence introduced at trial, Kvasys spoke to her boyfriend on the telephone at about 5:00 p.m. and then stopped at a sandwich shop at about 5:20 p.m. Her boyfriend attempted to call Kvasys at about 7:00 p.m., but she did not answer then or at 10:00 p.m. when he called again. The following day, a neighbor found Kvasys shot to death in her home. The home showed no signs of forced entry. Kvasys's purse was missing, but otherwise the home appeared neat and, despite the presence of valuables in the house, nothing else had been taken.

Defendant is the ex-boyfriend of Kvasys's daughter, Monika. Defendant began dating Monika when she was 14 and he was 20. Kvasys actively opposed their relationship, going so far as to seek a personal protection order and attempting to have defendant charged with statutory rape. Shortly before Kvasys's death, Monika began college and she ended her relationship with defendant. Defendant reacted poorly to the end of their relationship. He told a co-worker that he blamed Kvasys for the breakup, and "that he always gets his revenge on people." Around this same time, defendant purchased an unregistered .9mm handgun, the same type of gun used to murder Kvasys.

-1-

Defendant possessed a key to Kvasys's home, given to him by Monika when they were dating. Further, defendant did not go to work on the day of the murder. More particularly, he could not account for his whereabouts between 4:20 p.m. and 6:15 p.m., and his proposed alibi thereafter came from his mother, who testified that defendant was at home after 6:15 p.m., except for a 15 minute period sometime after 8:00 p.m. when he went to McDonald's for shakes. Defendant's purple Monte Carlo was seen parked around the corner from Kvasys's home on the day of the murder by Andrew Payne, someone familiar with the car because defendant frequently parked at that location when dating Monika. Payne had taken pictures of the vehicle to file a complaint about speeding, and police were able to obtain defendant's license plate number from the pictures. In addition, Payne testified that on the day of the murder, he saw defendant exit the vehicle with a backpack and walk toward Kvasys's street. Two of Kvasys's neighbors reported seeing a man with a backpack in Kvasys's driveway on the day of the murder.

Police found "fresh" blood on an interior door of Kvasys's home and, while the exact age of the blood could not be determined, DNA testing established that this blood matched defendant. Police also found black fibers on Kvasys's hands. Although the source of fibers could not be stated definitively, those fibers were consistent with a jacket belonging to defendant. Eventually, police also recovered Kvasys's purse, which had been found by a homeless man less than a mile from the McDonald's visited by defendant on the night of the murder and on a route defendant could have taken to that McDonald's from his home. The purse had been abandoned and its credit cards unused.

Following a bench trial, the trial court found defendant guilty of first-degree murder and felony-firearm. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

Defendant first argues on appeal that there was insufficient evidence presented at trial to support his convictions. According to defendant, the evidence was "purely circumstantial" and does not support defendant's convictions beyond a reasonable doubt. He argues that the police focused solely on defendant and that police failed to adequately investigate other leads and suspects, including Kvasys's boyfriend. Defendant also challenges the timeline of events, claiming that the police failed to establish that defendant could have committed the murder in the short timespan between 5:20 p.m., when Kvasys stopped for a sandwich, and 6:15 p.m.

This Court reviews challenges to the sufficiency of the evidence de novo following a bench trial. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found each element of the charged crimes proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Further, the prosecution need not "disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince [the trier of fact] in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (citation and quotation marks omitted). "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with [the fact finder's]

determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

To support a conviction for first-degree murder, the prosecution must prove "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Intent and premeditation may be inferred from all the facts and circumstances. *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011); *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998). "Intent may be inferred from a defendant's words, acts, means, or the manner used to commit the offense," *People v Bosca*, 310 Mich App 1, 21; 871 NW2d 307 (2015) (quotation marks and citation omitted), while "[p]remeditation may be established through evidence of (1) the relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself and, (4) the defendant's conduct after the homicide," *Unger*, 278 Mich App at 229.

In this case, ample evidence, both direct and circumstantial, existed to support defendant's first-degree murder conviction. Kvasys was found killed in her home, shot in the face and body, by a .9mm handgun. The manner of death plainly supports the conclusion that the shooter intended to kill Kvasys. See *People v Bowman*, 254 Mich App 142, 152; 656 NW2d 835 (2002). Further, viewed in a light most favorable to the prosecution, the prosecutor presented sufficient evidence to establish that defendant was the killer and that he acted with premeditation and deliberation. To begin with, defendant purchased an unregistered .9mm handgun a few weeks before Kvasys's death. Kvasys's home showed no signs of forced entry, and defendant had a key to the house. Defendant's blood was found on an interior door of the house, and fibers from his jacket were consistent with those found on Kvasys. A witness placed defendant's car around the corner from Kvasys's house on the day of the murder. Defendant was seen walking away from his car with a backpack, heading toward Kvasys's street, and a man with a backpack was also seen in Kvasys's driveway. Moreover, defendant was largely unable to account for his whereabouts on the day of the murder. To the extent his mother offered him an alibi after 6:15 p.m., the credibility and weight of her testimony was for the trier of fact. See *Unger*, 278 Mich App at 222. And, in any event, the trial court could have concluded from the facts presented that the victim died before 6:15 p.m.

Defendant also had a clear motive for the crime. See *id.* at 223 ("[E]vidence of motive in a prosecution for murder is always relevant."). As noted, Kvasys actively opposed defendant's relationship with Monika and, after Monika dumped defendant, he told a coworker that he blamed Kvasys and "that he always gets his revenge on people." In this respect, it bears repeating that the home showed no signs of forced entry, the home appeared neat, and the only item missing was Kvasys's purse, which was found abandoned—the credit cards unused—in the proximity of defendant's home and the McDonald's he visited on the night of the murder. In other words, the evidence suggests that the motive for the crime was other than robbery, and defendant had a clear motive for the murder as well as the means and opportunity to accomplish that killing. Moreover, the history of defendant's contentious relationship with Kvasys—particularly when coupled with defendant's actions leading up to the killing and the circumstances surrounding the murder—also supports the inference that defendant acted with premeditation. See *id.* at 229.

In sum, taken together, the evidence reasonably supports the conclusion that defendant planned Kvasys's murder weeks in advance, beginning with the purchase of a handgun, and that he then intentionally carried out the killing on the day in question by driving to Kvasys home, entering her house with his key, shooting Kvasys repeatedly at close range, and then stealing her purse to give the impression of a robbery. Contrary to defendant's arguments, the fact that much of the evidence was circumstantial does not render the evidence insufficient. See *Nowack*, 462 Mich at 400. Likewise, to the extent defendant suggests the possibility of alternative suspects, the prosecutor was not required to disprove every possible theory of innocence. See *id.* Instead, the evidence presented in this case was sufficient to support the conclusion that defendant intended to kill the victim, and that he did so with premeditation and deliberation. See *Bennett*, 290 Mich App at 472. Thus, viewed in a light most favorable to the prosecution, the evidence was sufficient to support the trial court's conclusion that defendant was guilty of first-degree premeditated murder.

The evidence supporting defendant's first-degree premeditated murder conviction also supports his felony-firearm conviction. For a conviction of felony-firearm, the prosecution must show that defendant possessed a firearm during the commission of a felony or the attempt to commit a felony. *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003). The homicide in this case was committed through the use of a firearm, as the victim's cause of death was "multiple gunshot wounds." Thus, the evidence was also sufficient to support the conclusion that defendant possessed a firearm, and indeed used it, during the commission of a felony.

Next, defendant argues that he was deprived of his constitutional right to the effective assistance of counsel when defense counsel failed to (1) hire a DNA expert to contest the state's expert testimony establishing the presence of defendant's DNA at the crime scene and to testify that no DNA was found on the jacket defendant allegedly wore during his commission of the crime, (2) properly investigate by consulting with a private investigator who had interviewed a number of witnesses, and (3) call at least two of these witnesses to testify at defendant's trial.

Because defendant failed to move the trial court for a new trial or for a *Ginther*[1] hearing, his claim of ineffective assistance of counsel is unpreserved and reviewed for mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). There is a strong presumption that an attorney's assistance was effective, and the defendant bears the heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). To establish ineffective assistance, the defendant must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas,* 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). A defendant also bears the burden of establishing the factual predicate of an ineffective assistance claim. *Id*.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses," meaning defenses that might have made a difference in the outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). At the same, counsel is afforded wide discretion regarding trial strategy. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). The decision to call witnesses, including an expert, is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Petri*, 279 Mich App at 411 (citation omitted). "Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

In this case, defendant has failed to show that counsel's failure to hire a DNA expert to testify at trial constituted ineffective assistance. Quite simply, defendant has not established the factual predicate of his claim. Defendant speculates that expert DNA testimony might have been helpful, but he presents no actual evidence to establish that a DNA expert's testimony would have been favorable to his case. Cf. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). On this record, defendant has not shown that counsel's decision not to retain an expert was objectively unreasonable or that expert testimony would have altered the outcome of the trial. See *id.*; *Payne*, 285 Mich App at 190. Thus, defendant has not shown that he was denied the effective assistance of counsel on this basis.

Similarly, there is no factual support for defendant's assertion that counsel performed ineffectively by failing to contact a private investigator who allegedly possessed information about additional witnesses. Defendant does not identify this private investigator and he makes no offer of proof with regard to the information purportedly possessed by this investigator. Indeed, given that there is no information about this investigator, it is quite possible that counsel did speak with the investigator before trial. Ultimately, absent an offer of proof, defendant has not established the factual predicate of his claim and he has not shown that he was denied the effective assistance of counsel. See *Douglas*, 496 Mich at 592.

Finally, there is also no merit to defendant's argument that defense counsel's failure to call two witnesses amounted to ineffective assistance. Defendant states in his brief that Kvasys's neighbors, Cleatice and Judy Conn, "would testify they saw a black car parked at the victim's house the night of the crime." However, defendant makes this assertion without any offer of proof, such as an affidavit from these witnesses, to establish the content of their testimony. Without an offer of proof, defendant has not established the factual predicate of his claim. See *id.* On the record before us, defendant has not shown that counsel was unreasonable for failing to call these witnesses or that their testimony would have made a difference in the outcome of trial. See *Payne*, 285 Mich App at 190. In addition, we note that police officers testifying at trial mentioned unnamed witnesses who reported seeing a black car at Kvasys's house on the night of the murder. Thus, the reported sighting of this car was made known at trial and any failure by counsel to call defendant's proposed witnesses did not deprive defendant of a substantial defense. See *Dixon*, 263 Mich App at 398. Defendant has not established his ineffective assistance claim.

Affirmed.

                                              /s/ Henry William Saad
                                              /s/ David H. Sawyer
                                              /s/ Joel P. Hoekstra