PEOPLE v BOWMAN

Docket No. 230381. Submitted August 7, 2002, at Grand Rapids. Decided
November 15, 2002, at 9:20 A.M. Leave to appeal sought.

Kevin D. Bowman was convicted by a jury in the Kent Circuit Court,
Dennis C. Kolenda, J., of first-degree murder and possession of a
firearm during the commission of a felony. The victim, a drug
dealer and associate of the defendant, was found shot to death in
the victim's apartment, with the victim's money, drugs, and guns
missing. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in refusing to admit
into evidence hearsay testimony regarding persons other than the
defendant who may have harbored a motive and intent to kill the
victim. One statement, which was made following a drive of an
indeterminate length from one house to another and in a separate
conversation with someone not present during the first conversa-
tion, was not a present sense impression under MRE 803(1), i.e., a
statement describing or explaining an event or condition made
while the declarant was perceiving the event or condition, or imme-
diately thereafter. Nor was the statement an excited utterance
under MRE 803(2), because it did not arise from a startling occa-
sion and was not made before there was time to contrive and mis-
represent. Another statement was not a statement against the penal
interest of the declarant, MRE 804(b)(3), because corroborating cir-
cumstances clearly indicating the trustworthiness of the statement
were lacking.

2. The trial court did not err in instructing the jury about reason-
able doubt by equating proof beyond a reasonable doubt with proof
that leaves the jurors firmly convinced of guilt without any real
possibility of innocence. The instruction was based on the pattern
criminal jury instructions developed by the Federal Judicial Center
and has not been found to be unconstitutional by any appellate
court.

3. The first-degree murder conviction was supported by sufficient
evidence, regardless of whether it was for premeditated murder or
murder committed in the course of a larceny. The multiple shots
fired at the victim at close range and while he was asleep, as well

as the defendant's jailhouse confession to a fellow inmate, indicated premeditation. The absence of the victim's property at his apartment following his shooting and evidence of the defendant's newfound wealth immediately following the victim's death indicated larceny by the defendant.

Affirmed.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *T. Lynn Hopkins*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*) for the defendant an appeal.

Before: WHITBECK, C.J., and BANDSTRA and TALBOT, JJ.

PER CURIAM. Defendant appeals as of right his jury convictions of first-degree murder, MCL 750.316, and possession of a firearm during the commission of a felony, MCL 750.227b. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the murder of a midlevel Grand Rapids area drug dealer found shot to death in his apartment. Forensic evidence admitted at trial indicated that the victim had been shot several times at close range while asleep in his bed. However, no evidence of forced entry into the apartment, which was generally secured by a deadbolt, was found.

Evidence offered at trial indicated that on the eve of his death the victim was in possession of a large amount of cash and cocaine and was alone in the apartment with defendant, who, despite being described as the victim's "shadow," was considered

an "outsider" in a tightly knit group of associates centered around the victim. After the murder, defendant gave to the police and several individuals a number of inconsistent accounts regarding his whereabouts at the time of the murder. Defendant also began uncharacteristically spending money and was observed wearing more expensive clothing than usual. At about that same time, defendant was arrested and jailed for reasons unrelated to the murder and, while in jail, bragged to a fellow inmate that he had killed someone who had "disrespected" him. Defendant further related details of the killing that were consistent with the victim's murder but that only the killer and those who actually examined the body would have known at that time. Defendant also told the inmate that he had stolen both cash and cocaine in conjunction with the murder.

During the course of the year-long investigation into the murder, defendant spoke with the police on several occasions. Although initially denying any involvement in the killing and theft, defendant ultimately acknowledged that he "may" have shot the victim, but indicated that he must have blacked out because he could not specifically recall the events of that evening. On the basis of this evidence, the jury convicted defendant as stated above. Defendant now appeals as of right, raising allegations of evidentiary and instructional error.

## II. ANALYSIS

### A. HEARSAY CONCERNING MOTIVE AND INTENT OF OTHERS

Defendant first argues that the trial court erred by declining to allow him to present hearsay testimony

regarding persons other than himself who may have harbored a motive and intent to kill the victim. Specifically, defendant claims that the court should have admitted testimony that the victim was "upset" after driving from a meeting with a fellow drug dealer to the home of a friend, and that a mechanic who knew the victim heard someone in his automobile repair shop boasting that he had killed a man by shooting him in the head. Defendant claims that the first of these statements was admissible as either a present sense impression or excited utterance under MRE 803(1) or (2), and that the second was admissible as a statement against penal interest under MRE 804(b)(3). We disagree.

We review for an abuse of discretion a trial court's ruling on the admissibility of evidence. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). With respect to the admissibility of the first challenged statement, a present sense impression is defined under MRE 803(1) as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." This Court is not overly literal in construing the phrase "immediately thereafter" and will allow a statement made less than a minute or even several minutes after the event observed to qualify under this exception. See *People v Cross*, 202 Mich App 138, 142; 508 NW2d 144 (1993). However, the statement at issue here was not made merely a few minutes after the conversation being related took place, but following a drive of an indeterminate length from one house to another, and then in a separate conversation with someone not present during the first conversation. To call such an account a "present sense impression" is

to rob the phrase of its meaning, and we will not interpret the language of this evidentiary rule in a sense so contrary to its " 'fair and natural import.' " See *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999), quoting *People ex rel Twitchell v Blodgett*, 13 Mich 127, 168 (1865) (COOLEY, J.). Accordingly, we do not conclude that the trial court abused its discretion by declining to admit the subject statement under MRE 803(1).

We similarly find no support for defendant's contention that this testimony was admissible as an excited utterance under MRE 803(2). The excited utterance exception applies only to a statement that arises from a truly " 'startling occasion' " and was " 'made before there has been time to contrive and misrepresent.' " *People v Kreiner*, 415 Mich 372, 378-379; 329 NW2d 716 (1982), quoting *People v Gee*, 406 Mich 279, 282; 278 NW2d 304 (1979). In addition to considering whether there was time to fabricate the statement, a court must also consider whether the declarant's emotional state would have permitted such fabrication. *People v Edwards*, 206 Mich App 694, 697; 522 NW2d 727 (1994). Under none of these standards does the statement in question qualify as an excited utterance. Although defendant offered some detail regarding the substance of and circumstances giving rise to the challenged testimony, the fact that one drug dealer was "upset" after seeing another does not suggest any "startling" event. Indeed, we have found the sexual harassment of a corrections officer at work two days before being murdered (allegedly in connection with the harassment) not to have constituted a startling event, *McCallum v Dep't of Corrections*, 197 Mich App 589, 592-593, 604; 496 NW2d 361

(1992), and have similarly ruled that viewing a daughter's body in an open casket four days after she was murdered is not a startling event that allows the admission of a hearsay statement under MRE 803(2), *People v Lobaito*, 133 Mich App 547, 558-559; 351 NW2d 233 (1984). In light of these precedents, a disagreement, even a heated or upsetting one, between drug dealers simply cannot be regarded as a "startling event." Moreover, the time between the event in question and the statement itself gave the victim "time to contrive and misrepresent" before making the statement, *Kreiner*, *supra*, and it does not appear that the victim's emotional state when he made the statement necessarily would have excluded the possibility of such fabrication, *Edwards*, *supra*. Accordingly, the trial court did not abuse its discretion in refusing to admit the statement as an excited utterance under MRE 803(2).

We similarly find no error in the trial court's decision not to admit the second statement in question, i.e., that, at some indeterminate point, a mechanic heard a certain "Little Tony," who allegedly owned a handgun similar to that with which the victim was killed and was affiliated with a drug organization rival to that of the victim, remark that he had killed someone by emptying a gun into him, and in the process had kicked in both a front door and a bedroom door. Defendant sought to admit this statement under MRE 804(b)(3), which permits the admission of hearsay statements against the penal interest of the declarant. However, under this rule, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trust-

worthiness of the statement." MRE 804(b)(3). The requirement of corroborating circumstances for the application of this exception to the general rule excluding hearsay has been enforced in a number of our cases, including *People v Jensen*, 222 Mich App 575, 582-583; 564 NW2d 192 (1997), vacated in part on other grounds, 456 Mich 935 (1998), *People v Underwood*, 184 Mich App 784, 788; 459 NW2d 106 (1990), and *People v Sanders*, 163 Mich App 606, 610; 415 NW2d 218 (1987), and we agree with the trial court that the evidence proffered here lacked such corroborating circumstances. Indeed, the condition of the doors in the victim's apartment actually contradicted the statement. Accordingly, the statement was insufficiently trustworthy to warrant its admission into evidence under MRE 804(b)(3), and the trial court did not abuse its discretion in so ruling.[1]

### B. INSTRUCTION ON REASONABLE DOUBT

Defendant next argues that the trial court's instructions regarding the standard for finding him guilty beyond a reasonable doubt were erroneous. The trial court instructed the jury that

[p]roof beyond a reasonable doubt simply means evidence presented here which after you have assessed it leaves you firmly convinced in your own mind that he's guilty. If you

---

[1] Defendant also asserted at trial, without any elaboration, that this statement was admissible as "a present sense impression or excited utterance." However, like the previously discussed statement, there is nothing to indicate that this statement was made "while" or even within a few minutes after the killing being discussed took place. MRE 803(1); *Cross, supra.* Nor was there any indication that the statement was made "while the declarant was under the stress or excitement" caused by that allegedly startling event. MRE 803(2).

are firmly convinced based on the evidence, then you have been convinced beyond a reasonable doubt.

... If based on your careful consideration of the evidence and whatever inferences follow from the evidence you're firmly convinced that [defendant] is guilty of some criminal offense, then you may find him guilty.

If, on the other hand, based on the evidence, the lack of evidence, and inferences which follow, there's a real possibility in your mind, not just a mere possibility, that he's not guilty, then, of course, he's entitled to the benefit of the doubt and has to be found not guilty.

Defendant argues that the instruction, by equating proof beyond a reasonable doubt with proof that leaves the jurors "firmly convinced" of guilt without any "real possibility" of innocence, diluted the standard for a criminal conviction and therefore constituted structural error that deprived him of a fair trial and requires automatic reversal. See *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999). We disagree.

Defendant cites, and we are able to find, no case in which any appellate court has found the challenged instruction, which was taken from the pattern criminal jury instructions developed by the Federal Judicial Center, to be constitutionally defective. See Federal Judicial Center, Pattern Criminal Jury Instructions, pp 17-18. To the contrary, this instruction has been upheld in a number of federal cases, see, e.g., *Harris v Bowersox*, 184 F3d 744, 751-752 (CA 8, 1999), and *United States v Artero*, 121 F3d 1256, 1257-1259 (CA 9, 1997), and has been highly praised in the concurring opinion of a United States Supreme Court justice:

[W]e have never held that the concept of reasonable doubt is undefinable, or that trial courts should not, as a matter of course, provide a definition. . . .

\*     \*     \*

. . . . The Federal Judicial Center has proposed a definition of reasonable doubt that is clear, straightforward, and accurate. That instruction reads:

"[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty." Federal Judicial Center, Pattern Criminal Jury Instructions, at 17-18 (instruction 21).

This instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. The "firmly convinced" standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a "real possibility" that the defendant is innocent. This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly. [*Victor v Nebraska*, 511 US 1, 26-27; 114 S Ct 1239; 127 L Ed 2d 583 (1994) (Ginsburg, J., concurring).]

Considering the absence of authority finding this instruction to be erroneous, and the weight of authority upholding and commending it, we find no basis for a determination of error.

### C. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that there was insufficient evidence to convict him of first-degree murder, either on the theory that he acted with premeditation or that he committed the crime in the course of another felony, in this case, larceny. The elements of first-degree murder are that the defendant killed the victim and that the killing was either "willful, deliberate, and premeditated," MCL 750.316(1)(a), or committed in the course of an enumerated felony, such as larceny, MCL 750.316(1)(b). Defendant was convicted under both theories.

We review de novo challenges to the sufficiency of evidence in criminal trials to determine whether, when the evidence is viewed in the light most favorable to the prosecutor, a rational trier of fact could have found all the elements of the charged crime to have been proved beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). Viewed in this light, the evidence was sufficient to sustain the conviction. The evidence that defendant killed the victim was overwhelming. He confessed to the police and to a fellow inmate. Further, there was overwhelming circumstantial evidence of his guilt, including opportunity, presence at the crime scene, improvement in his financial circumstances immediately after the victim's death, and defendant's apparent knowledge of details about the

killing that no one but the police and the murderer could have known.

With respect to premeditation, the evidence is even more compelling. In the first place, there is the manner of the death. The victim was shot multiple times at close range while lying asleep, two of the bullets having penetrated his face. One cannot, under normal circumstances, kill a sleeping person at close range in any fashion other than with premeditation, especially when the person is a close companion and benefactor. As made clear by the pathologist's testimony, there was no evidence suggesting sudden rage or self-defense, or any other circumstance under which an unpremeditated killing might occur. Moreover, defendant's own jailhouse confession admitted not only premeditation, but motive, i.e., that the victim "disrespected" him. Defendant's statement regarding the disrespect was, moreover, corroborated by independent evidence concerning the relationship between defendant and the victim. Given this evidence, a rational trier of fact could conclude that, in the middle of the night, when the two were alone, defendant shot the sleeping victim at point-blank range, resentful of the condescending treatment he felt he was receiving. Viewed in the light most favorable to the prosecution, this evidence is more than sufficient to establish premeditation beyond a reasonable doubt.

There was also more than sufficient evidence to conclude beyond a reasonable doubt that the murder was committed in the course of a larceny. Evidence at trial indicated that money, drugs, and guns belonging to the victim were in his apartment immediately before he was shot, but that these items were missing when the victim's body was discovered. This in itself

would be enough, when viewed in the light most favorable to the prosecution, to establish beyond a reasonable doubt that the murder was committed in the course of larceny. However, there was also evidence of defendant's newfound wealth immediately following the crime, including his throwing a large outdoor party on Memorial Day and his noticeably more expensive wardrobe. Combined with the evidence that it was defendant who committed the murder, and that he knew that the victim had the missing items in his possession, this was more than sufficient evidence to show beyond a reasonable doubt that defendant committed the larceny.

We affirm.