*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTIAN WILLIAM HILLMAN,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 339917
Kent Circuit Court
LC No. 16-010254-FC

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of second-degree murder in violation of MCL 750.317. Defendant savagely beat an elderly man in a road-rage incident causing the victim to go into a coma and later die. The trial court sentenced defendant to 270 months to 100 years of imprisonment. We affirm.

## I. BACKGROUND

During the evening hours of September 29, 2016, defendant and the victim became involved in an altercation by the side of the road. Defendant was riding a dirt bike without an operable headlight and the victim was driving a truck. Defendant told police that the victim attempted to run him off the road, allegedly sparking the altercation. Both defendant and the victim ended up pulling off the road into a church parking lot, where a physical altercation ensued. At the time, defendant was under 20 years old and the victim was in his 60's. The victim ended up on the ground and defendant, who was wearing steel-toe boots, repeatedly kicked the victim in the ribs and the head. Multiple witnesses testified that they saw defendant viciously kicking the victim, even after the victim was completely incapacitated and lying helpless on the ground. Multiple witnesses testified that they heard defendant stating that the victim deserved what happened to him because that was what he got for "messing" with defendant. Witnesses also observed that the victim's pants had been pulled down around his ankles.

In addition, witnesses testified that defendant left the scene at one point, only to return and continue viciously kicking the incapacitated victim in the ribs and the head. Defendant

himself admitted that when he left the scene, the victim was lying on the ground, gurgling on his own blood. Defendant left the scene and did not contact authorities to obtain medical assistance for the victim. Defendant returned to his home with two friends and stated that he hit the victim because the victim deserved it. One of defendant's friends testified that defendant was excited when he described the incident and that defendant acted proud of what he had done. When he met with police, defendant stated that he gave the victim "a thorough ass beating." The victim spent approximately one month in a coma and ultimately died of his injuries, without being able to speak about what happened.

On the night of the incident, the police interviewed defendant in an interview room at the sheriff's department. During the initial portion of that interview, defendant willingly spoke with police officers about the incident with the victim. Once defendant asserted his right to an attorney, the police officers ceased their interrogation. After he asserted his right to an attorney, defendant asked the police officers to return his cell phone to him. The police officers did so and defendant made several calls while in the police interview room, including a call to his mother. The police captured a video and audio recording of defendant's words and conduct in the interview room with a hidden recording device. Defendant did not know that he was being recorded when he was left alone in the police interview room, including the period when he called his mother.

At trial, the prosecutor sought to play approximately 40 minutes of the recording for the jury. Defense counsel initially objected to only the eight-minute period of the recording containing defendant's telephone call with his mother. Defense counsel later conceded that the first six minutes of that eight-minute period were relevant and probative evidence, and focused his objection on only a two-minute period of the recording containing defendant's telephone call with his mother. During that portion of the telephone call, defendant used vulgar language, including a vulgar epithet repeatedly directed at one of the police officers present during the police interview. Defendant discussed with his mother the fact that police officers were then executing a search warrant of his home. Defendant objected to his mother's decision to allow the police officers into the home, to which his mother responded that the police officers had a warrant. In addition, defendant visibly reacted to the news that the police officers seized his boots from the home. Evidence admitted at trial indicated that defendant repeatedly kicked the victim in the head and ribs, and both boots contained the victim's blood soaked into the stitching and located on the toes of the boots.

Defense counsel objected to the admission of the two-minute portion of the recording into evidence on two grounds: (1) defendant had a reasonable expectation of privacy in the police interview room when he placed the telephone call to his mother, and (2) the recording was inadmissible under MRE 403 because defendant's vulgar language directed at the police officer made defendant "look like a jerk" and the recording was therefore substantially more prejudicial than probative. Defendant did not object to the admission of the two-minute portion of the recording based on MRE 404(b). The trial court ruled that defendant had no reasonable expectation of privacy in a police interview room and that the video evidence was admissible under MRE 403 because it tended to show defendant's demeanor and state of mind on the night of the incident.

Later in the trial, when the prosecutor moved to admit the recording into evidence, defense counsel expressly stated that he had no objection to the admission of the recording into evidence, provided that it was used for the purposes earlier identified by the trial court. As defense counsel stated, "No objection, Your Honor, provided for the purpose of that we agreed upon of (inaudible)." The trial court allowed the prosecutor to play the recording for the jury, including the two-minute portion to which defense counsel originally objected.

## II. ANALYSIS

### A. INTERVIEW ROOM RECORDING

Defendant first argues that the trial court erred by admitting into evidence a portion of the recording of defendant speaking to his mother while at the police station. Defendant contends on appeal that this evidence constituted inadmissible other-acts evidence under MRE 404(b) that the prosecutor used to show that defendant had a propensity to commit the charged offense. We disagree.

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). To preserve for appeal the issue of the improper admission of evidence, "a party generally must object at the time of admission." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). In this case, defendant objected to the admission of the portion of the recording on two grounds, neither of which was the admissibility of the recording under MRE 404(b), as argued here on appeal. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Defendant, therefore, did not preserve for appeal his argument that the recording constituted inadmissible other-acts evidence under MRE 404(b).

This Court reviews unpreserved claims of error for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763, 773-774; 597 NW2d 130 (1999). To establish plain error affecting his substantial rights, defendant must establish that (1) an error occurred, (2) the error was plain, and (3) the plain error affected his substantial rights, meaning that he was prejudiced by the error. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (cleaned up).

Furthermore, waiver has been defined as the intentional relinquishment or abandonment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Waiver differs from forfeiture, which has been described as the failure to make the timely assertion of a right. *Id*. A defendant who waives his rights may not "seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (cleaned up). There are no magic words that constitute a waiver, and this Court will consider the entire context "concerning a purportedly waived issue to determine whether the defendant, in fact, intentionally relinquished a known right." *People v Hershey*, 303 Mich App 330, 350; 844 NW2d 127 (2013). Given defense counsel's statement in the trial court when the recording was admitted into evidence, we conclude that defendant waived any argument that the recording was inadmissible under MRE

404(b). Defense counsel stated that he had no objection to the admission of the recording, other than the objections he stated earlier, on which the trial court ruled. The trial court indicated that the two-minute recording segment was admissible under MRE 403 because it tended to show defendant's demeanor and state of mind on the night of the incident. Therefore, by expressly stating that he had no objection to the evidence except for the arguments he raised earlier, defendant waived the argument that the recording was inadmissible under MRE 404(b).

Even if defendant had not waived his argument that the two-minute segment was inadmissible under MRE 404(b), defendant's argument on appeal regarding his statements to his mother is entirely misplaced because those statements are not other-acts evidence subject to MRE 404(b). Admission of other-acts evidence is controlled by MRE 404(b)(1), which provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The recording contained statements defendant made. See *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989)[1] ("[A] prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement and not a prior bad act."), citing *People v Goddard*, 429 Mich 505, 515; 418 NW2d 881 (1988). "As the statement of a party opponent, the admissibility analysis involves instead first determining whether the statement was relevant, and second whether its probative value outweighed its possible prejudicial effect." *Goddard*, 429 Mich at 515. Therefore, we conclude that MRE 404(b) does not apply to that portion of the recording containing defendant's expression of vulgar language while conversing with his mother.

To the extent that defendant also argues on appeal that the recording should have been excluded under MRE 403, defendant's position is without merit. The prosecutor offered the recording because defendant intended to argue that the incident arose from a moment's heat of passion that excused his conduct so that the jury could consider the lesser-included offense of voluntary manslaughter. The prosecutor argued that the evidence had relevancy to counter the defense and because it depicted defendant's demeanor.

The recording depicted defendant using vulgar language but it did not suggest that defendant had a character, demeanor, or propensity to commit second-degree murder. The evidence was relevant to the incident because defendant admitted that the incident "was a road rage thing." Defendant's remark constituted a statement against interest. The recording also depicted defendant expressing concern about the evidence the police gathered from his home pursuant to a search warrant. The evidence had relevancy to the determination of defendant's guilt and had high probative value. Defendant's periodic vulgar outbursts cannot be said to have engendered bias or prejudice against defendant. It is doubtful that reasonable jurors viewing the video footage would conclude that defendant's vulgar statements meant that he had a propensity to commit second-degree murder.

The record reflects that the trial court recognized that the evidence had relevance to the case and it appropriately examined the question and determined that the evidence had probative

---

[1] Criticized on other grounds by *People v Mayfield*, 182 Mich App 282, 284; 451 NW2d 583 (1990), rev'd 437 Mich 1060 (1991).

value that outweighed any alleged prejudice. Although the evidence certainly was prejudicial to defendant because it presented his statements against his interest, we hold that the trial court correctly concluded that the highly probative value of the evidence outweighed the potential for prejudice. The evidence did not confuse the issues or mislead the jury. The trial court, therefore, did not abuse its discretion by admitting the evidence. Reversal on this claimed error is not warranted.

## B. CHARACTER EVIDENCE

Defendant also argues that the trial court erred because it admitted improper character evidence when defendant's friend testified that on the night of the incident the two of them were out spray-painting bridges. We disagree.

Defendant did not object to the admission of this evidence. Therefore, defendant did not preserve this issue for appeal. Consequently, we review this claim of error for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763.

The record reflects that, at trial, the prosecutor asked defendant's friend what his and defendant's plan was on the night of the incident when they left defendant's house. Defendant's friend stated that they went out to spray-paint bridges. The prosecutor went on without further inquiry into the matter. The prosecutor did not use the statement for any purpose other than to describe the preliminary events leading up to the incident. The record does not reflect that the prosecutor sought to elicit the testimony to establish defendant's character or propensity to commit second-degree murder.

Further, defense counsel made no objection regarding the statement, did not request that the remark be stricken, and did not ask for a curative instruction by the trial court. Instead, defense counsel let it pass without drawing further attention to the matter, likely as a matter of sound trial strategy. The trial court did not intercede and it did not have any reason for doing so. On appeal, defendant offers no proof that the statement actually prejudiced his case. He merely speculates that it did. This evidence was not remotely prejudicial to defendant, and we hold that the trial court did not commit plain error in this regard.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel provided him ineffective assistance of counsel, in two respects. Defendant argues that his trial counsel was ineffective when he failed to object to the testimony about spray painting and when he failed to object to the prosecutor's comments during jury selection. We conclude that defendant's arguments lack merit.

On appeal, defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (cleaned up). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).

Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defense counsel cannot be said to have rendered ineffective assistance by failing to raise meritless or futile objections. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

## 1. WITNESS TESTIMONY

Defendant argues that his defense counsel rendered ineffective assistance of counsel by not objecting to the testimony of defendant's friend about spray painting.

The record indicates that defense counsel knew the background of this testimony because the witness testified at defendant's preliminary examination that he and defendant went to spray-paint bridges. Had defense counsel felt the matter had bearing on his client's case, defendant could have filed a motion in limine before trial to exclude the evidence or objected to the matter at trial. Defense counsel, however, made a strategic decision not to do so. Further, the record reflects that defense counsel decided not to make an issue of the brief statements at trial. As noted above, such a strategic decision seems fitting because the testimony had no real import regarding whether and why defendant engaged in the altercation with the victim, nor did the testimony suggest anything more than relatively minor teenage antics. Defense counsel's performance did not fall below an objective standard of reasonableness by not objecting to this testimony. See *Trakhtenberg*, 493 Mich at 51.

## 2. JURY SELECTION

Defendant next argues that defense counsel rendered ineffective assistance by not objecting when the trial court and the prosecutor made statements during jury selection regarding the burden the prosecutor bore under the "beyond a reasonable doubt" standard of proof. Defendant claims that their remarks incorrectly defined the applicable standard of proof. We disagree.

In *People v Allen*, 466 Mich 86, 90; 643 NW2d 227 (2002), the Michigan Supreme Court explained:

> The right to a jury trial in a criminal felony prosecution is fundamental. The fundamental nature of the right to a jury trial is reflected in both the federal and state constitutions. Interrelated with the right to a jury trial is the requirement that the prosecutor prove guilt beyond a reasonable doubt. The requirement of burden of proof beyond a reasonable doubt is important because it ensures a reliable determination of guilt. . . . [An] erroneous definition of reasonable doubt was held to constitute a "structural" error in the trial. A structural error necessarily renders unfair or unreliable the determination of guilt or innocence and defies harmless error analysis. An erroneous definition of reasonable doubt in a jury instruction violates the jury trial guarantee. A decision rendered on the basis of an erroneous definition of proof beyond a reasonable doubt is not a true "verdict" within the meaning of the constitutional guarantee of a jury trial. [Citations omitted.]

"The stringency of the beyond a reasonable doubt standard bespeaks the weight and gravity of the private interest affected, society's interest in avoiding erroneous convictions, and a judgment that those interests together require that society impose almost the entire risk of error upon itself." *Santosky v Kramer*, 455 US 745, 755; 102 S Ct 1388; 71 L Ed 2d 599 (1982) (cleaned up). The United States Supreme Court has explained that because the application of the "beyond a reasonable doubt" standard requires a fact-finder to "reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attached to the criminal sanction and thus to liberty itself." *Jackson v Virginia*, 443 US 307, 315; 99 S Ct 2781; 61 L Ed 2d 560 (1979) (citation omitted).

In this case, the trial court and the prosecutor made statements during jury selection regarding the "beyond a reasonable doubt" standard of proof. The trial court and the prosecutor explained that the standard did not require proof to the jurors' 100% certainty. The record reflects that defense counsel did not object and indicated agreement with the statements so long as jurors understood that they had to follow the trial court's instructions regarding the law and the burden of proof.

Although the "beyond a reasonable doubt" standard is a high standard of proof, courts have not held that the prosecutor must prove the elements of the charged offense so that jurors have 100% certainty. This Court has explained that the "beyond a reasonable doubt" standard does not require the prosecution to prove facts with 100% certainty. See *People v Bowman*, 254 Mich App 142, 149-151; 656 NW2d 835 (2002), citing *Victor v Nebraska*, 511 US 1, 26-27; 114 S Ct 1239; 127 L Ed 2d 583 (1994) (GINSBURG, J., concurring).

Thus, the trial court did not err by stating that proof beyond a reasonable doubt did not require prospective jurors to have 100% certainty to render their verdict. Moreover, the record reflects that the trial court instructed prospective jurors that defendant had the presumption of innocence throughout his trial and that the prosecutor bore the burden of proving each element of the charged offense beyond a reasonable doubt. The prosecutor's statements that it did not have to prove the elements so that the jury had 100% certainty were not improper. Because the trial court's statements and the prosecutor's statements were not incorrect, defense counsel had no obligation to make a futile objection. See *Putman*, 309 Mich App 245. Therefore, defense counsel's performance did not fall below an objective standard of reasonableness by not objecting to the trial court's and the prosecutor's remarks during jury selection. See *Trakhtenberg*, 493 Mich at 51. Defense counsel, therefore, did not provide defendant ineffective assistance.

## D. CUMULATIVE ERROR

Defendant also asserts that cumulative errors require reversal of his conviction. Defendant has failed to establish that any errors occurred at his trial. Because defendant has not established that any errors occurred, there can be no cumulative effect of errors that would merit reversal. See *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle