*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLICATION
June 11, 2019

Plaintiff-Appellee,

v

No. 341383
Genesee Circuit Court
LC No. 15-038144-FC

MARCUS ALLEN HOWELL,

Defendant-Appellant.

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b; assault with intent to murder (AWIM), MCL 750.83; three counts of armed robbery, MCL 750.529; first-degree home invasion, MCL 750.110a(2); and six counts of possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. We affirm defendant's convictions, but remand for the correction of errors in the judgment of sentence.

## I. BACKGROUND

Defendant's convictions result from a home invasion that occurred during the early morning hours of August 5, 2012. Three individuals—Patrick Boven, Randy Phillips, and Leah Hopkins—lived in the home. Boven and Phillips were murdered by gunshots to the head. The intruder assaulted Hopkins, but she was eventually able to escape to safety. She testified that she was sleeping in the basement of the home when she was awakened by someone opening the basement door. She tried to get out of her bed, but a man came running down the stairs at her, punching her in the head. The man ran between the downstairs and main levels of the home several times. Each time he returned to the basement, the man would assault Hopkins so that she could not leave. The man punched her approximately twenty times in the face, strangled her, and hit her in the head with a heavy television set. Hopkins testified that the man demanded money and was tossing her belongings around the basement.

According to Hopkins, at some point during the attack, the man sexually assaulted her. Hopkins submitted to a rape kit which returned DNA matching defendant's DNA profile.

Hopkins also testified that the man tried to kill her by slitting her throat with a knife. After the man slit her throat, he put his coat on and walked up the stairs while "grinning at" Hopkins "like he did something really good." Hopkins testified that the man carried a gun, but she did not hear any gunshots. After the man walked up the stairs, Hopkins fled the home to the safety of a neighbor's house. Police officers later discovered the bodies of Boven and Phillips, each killed by a gunshot to the head. Both men's rooms were ransacked and officers could not locate a wallet for either man. Similarly, Hopkins testified that her wallet was missing after the attack.

Defendant was charged with two counts of first-degree murder, MCL 750.316, one count of CSC-I, one count of AWIM, three counts of armed robbery, one count of first-degree home invasion, and eight counts of felony-firearm. The jury found defendant not guilty of the two murders and the related felony-firearm counts, but found him guilty of each of the remaining counts. The trial court sentenced defendant to prison terms of 225 months to 75 years for his CSC-I, AWIM, and three armed-robbery convictions, 95 months to 20 years for his first-degree home-invasion conviction, and two years for each felony-firearm conviction. This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that the prosecution presented insufficient evidence to convict him of three counts of armed robbery. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). The reviewing court must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v James*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 339504); slip op at 4 (internal citation and quotation marks omitted). A trier of fact may consider circumstantial evidence and all reasonable inferences that the evidence creates. *Solloway*, 316 Mich App at 180-181. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted).

To obtain a conviction of armed robbery under MCL 750.529, the prosecutor must establish:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

Defendant argues that the prosecution presented insufficient evidence to establish a completed larceny and that, in the absence of a completed larceny, he cannot be found guilty of armed robbery. We disagree. Notably, the phrase "in the course of committing a larceny" is statutorily defined to include "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2). Contrary to defendant's arguments on appeal, a completed larceny is not an element of armed robbery; rather, an attempted larceny is sufficient to support a conviction of armed robbery. *People v Williams*, 491 Mich 164, 172; 814 NW2d 270 (2012).

Viewing the evidence in a light most favorable to the prosecutor, the evidence was sufficient to support the conclusion that defendant attempted or completed a larceny against each victim. Specifically, the surviving victim testified that defendant rifled through her belongings in the basement while asking "where's your money, where's your money." Upstairs, the drawers in one man's bedroom were open. The other man's bedroom appeared "disheveled" or "ransacked," and both bedrooms appeared to "have been gone through." Viewed in a light most favorable to the prosecutor, this evidence supports the conclusion that—even if defendant was unsuccessful in finding money or other items to steal—he attempted to complete a larceny against each victim.

Moreover, contrary to defendant's argument, the jury could reasonably have concluded that defendant did in fact steal items from each victim. Hopkins testified that defendant demanded money from her and that she witnessed defendant pick up her wallet. She was unable to locate her wallet after the assault. Similarly, although the record revealed that both male victims kept their wallets close to them, neither victim's wallet could be located after the home invasion. Under the circumstances of this case, a jury could reasonably conclude that defendant stole the wallets. See, e.g., *People v Bowman*, 254 Mich App 142, 152-153; 656 NW2d 835 (2002). The evidence was sufficient to convict defendant of three armed robberies.

## B. EVIDENCE SUPPRESSION

Next, defendant argues that the prosecution violated his due-process rights by withholding "extra judicial" statements made by three witnesses to police officers before trial. Under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014) (internal citation and quotation marks omitted). A *Brady* violation occurs when "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 150. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (internal citation and quotation marks omitted).

Defendant concedes that he was provided with police reports about witness interviews, but argues that the prosecution suppressed "actual statements," audio recordings, and "waiver forms" that he could have used to impeach witnesses. Defendant, however, has offered no

evidence regarding the content of these alleged statements and, having reviewed the record we are unable to find as much. Defendants bears the burden of establishing the factual predicate for his claim and, without any showing regarding the content of the allegedly suppressed statements, we are unable to conclude that these statements, had they been released to defendant, would have resulted in a different outcome. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Accordingly, defendant's claim is without merit.[1]

## C. COERCED TESTIMONY

Defendant argues that the prosecution violated his due-process rights by coercing Bobby Person, to testify against him.[2] Witness intimidation by the prosecutor has been strongly condemned, and threats by law enforcement officers against witnesses may be attributed to the prosecutor. *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003); *People v Stacy*, 193 Mich App 19, 25; NW2d 675 (1992). "Attempts by the prosecution to intimidate witnesses from testifying, if successful, amount to a denial of a defendant's constitutional right to due process of law." *Hill*, 257 Mich App at 135.

At trial, Person testified that defendant told him that he had murdered two people and slit a woman's throat. Person also testified at two preliminary hearings. At the first hearing, Person denied discussing the crimes with defendant, but, at the second hearing, Person testified consistent with his trial testimony. At trial, Person explained that he was initially reluctant to implicate someone close to him but that he had spoken with an attorney and decided to testify truthfully. At trial, Person denied that the police threatened him or suggested that he could be charged criminally if he did not testify. Later, however, Person testified that police told him that they were "going to give [him] more time if [he] didn't say nothing." Person was never charged but "guess[ed]" that he could be charged as an "accessory or something" because of his contact with defendant. The trial court instructed the jury on judging witness credibility, indicating that it could consider whether the witness had any bias or reason to lie.[3] During closing arguments,

---

[1] We note that defendant moved this Court to remand for an evidentiary hearing pertaining to the prosecutor's alleged suppression of extrajudicial statements, and we denied his request. *People v Howell*, unpublished order of the Court of Appeals, entered November 16, 2018 (Docket No. 341383). In connection with defendant's motion, he failed to make an offer of proof to support his assertion that these items were withheld from him, that these items were favorable to him, and that these items were material. See *Chenault*, 495 Mich at 149-150. In other words, defendant has failed to show the need for further factual development on this issue.

[2] In making this argument, defendant also appears to argue that police officers violated Person's constitutional rights by compelling him to testify. Yet, "[a]s a general rule, one does not have standing to raise issues involving the violation of the rights of others." *People v Russell*, 266 Mich App 307, 314; 703 NW2d 107 (2005).

[3] To the extent defendant challenges the trial court's jury instructions, he waived this argument when his counsel expressed approval of the instructions at trial. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

defense counsel used Person's claim of police pressure to argue that Person's testimony incriminating defendant should not be believed.

Defendant maintains that the police coerced Person's cooperation and that the trial court should have sua sponte ordered the jury to disregard this evidence. We disagree. While some evidence tended to indicate that officers coerced Person into testifying, other evidence indicated that Person testified by his own volition, consistent with his attorney's advice. Indeed, Person testified that he was initially reluctant to implicate defendant, but that his trial testimony was the truth. Where, as here, the evidence for and against coercion is properly laid before the jury, there was no concern that the jury would not be able to perform "its traditional role of assessing credibility." *Stacy*, 193 Mich App at 28. In short, presenting the question to the jury satisfied defendant's right to due process. Defendant's argument is without merit.[4]

## D. JUDGMENT OF SENTENCE

Finally, both parties ask that we remand this case to the trial court to correct errors in the judgment of sentence. Because these issues were not raised below, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Questions of law are reviewed de novo. *People v Howell*, 300 Mich App 638, 644; 834 NW2d 923 (2013).

Regarding the consecutive nature of the sentences, the judgment states:

[Felony-firearm sentence] TO BE SERVED CONSECUTIVE TO [armed-robbery and home-invasion sentences]. [Home-invasion sentence] TO BE SERVED CONSECUTIVE TO [CSC-I, AWIM, and armed-robbery sentences] & [the felony-firearm sentence].

The prosecution argues that the judgment of sentence contains an error because, although it states that defendant's felony-firearm sentence is consecutive to his armed-robbery and home-invasion sentences, it does not state that defendant's felony-firearm sentence should also be consecutive to the sentences for CSC-I and AWIM. We agree. Although below, the trial court and the parties appeared to treat the felony-firearm sentence as a single sentence for one conviction, defendant was actually convicted of a separate felony-firearm offense in connection with each of his other offenses. The judgment should be amended to provide that defendant's felony-firearm sentences run concurrent to each other, but consecutive to the sentences for their predicate felonies—including the CSC-I and AWIM convictions. Moreover, as defendant points out, the judgment should reflect that the felony-firearm sentences precede the sentences for the predicate felonies. See MCL 750.227b(3) (stating that a term of imprisonment imposed for a felony-firearm conviction "is in addition to the sentence imposed for the conviction of the felony

---

[4] We also reject defendant's assertion that his attorney was ineffective for failing to move to exclude Person's testimony. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

or the attempt to commit the felony and shall be served consecutively with *and preceding* any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.") (Emphasis added).

Next, the prosecution argues that the jail credit in the judgment of sentence is incorrect. The judgment of sentence states that defendant had 730 days of jail credit toward his felony-firearm sentences and 105 days jail credit toward each of his other sentences. According to the prosecutor, because defendant's home-invasion sentence is consecutive to the other sentences, the 105 days of jail credit applied toward defendant's home-invasion conviction should not have been applied to defendant's convictions for CSC-I, AWIM, and armed robbery. We agree. When sentences are concurrent, jail credit is properly applied to each sentence. See *People v Williams*, 294 Mich App 461, 478; 811 NW2d 88 (2011). Nonetheless, when consecutive sentencing is imposed, a defendant is not entitled to "double credit." *People v Cantu*, 117 Mich App 399, 403; 323 NW2d 719 (1982). Rather, credit should be applied only toward the first sentence of the consecutive sentences. *Id*. Thus, because defendant's home-invasion sentence runs consecutive to his sentences for CSC-I, AWIM, and armed robbery, the trial court should not have applied the 105 day credit to the latter sentences. Accordingly, on remand, the judgment of sentence should be corrected to reflect that defendant is only entitled to 105 days credit toward the first of his consecutive sentences for home invasion, CSC-I, AWIM, and armed robbery.

Finally, the prosecution argues that the judgment of sentence incorrectly states that the murder charges were dismissed by "a party." In actuality, next to the murder charges on the judgment of sentence there is a "D," which, according to the form, indicates that the charges were "dismissed by court." It would perhaps be more accurate for the form to state "not guilty," but, as written, the form includes no option for "not guilty" and "D" for dismissed by the court appears to be the most accurate descriptor available. See generally MCR 6.427 ("If the defendant was found not guilty or for any other reason is entitled to be discharged, the court must enter judgment accordingly."). Thus, as constrained by the judgment form, the "D" indicator is not erroneous.

III. CONCLUSION

We affirm defendant's convictions, but remand for correction of errors in the judgment of sentence, consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-6-