*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JON THOMAS FOX,

Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 344159
Calhoun Circuit Court
LC No. 2016-003474-FC

Before: CAVANAGH, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c); unlawful imprisonment, MCL 750.349b; assault by strangulation, MCL 750.84(1)(b); and interference with electronic communications, MCL 750.540(5)(a). The trial court sentenced defendant to concurrent sentences of 285 to 855 months' imprisonment for each count of CSC-I, 100 to 180 months' imprisonment for his conviction of unlawful imprisonment, 67 to 120 months' imprisonment for his conviction of assault by strangulation, and 16 to 24 months' imprisonment for his conviction of interference with electronic communications. We affirm.

Defendant and the victim had an extremely tumultuous relationship that lasted several years. On the night in question, defendant waited for the victim inside her home. When she entered, defendant grabbed her and attempted to tie her hands around her back. Defendant escorted the victim to the bathroom to allow her to vomit and then proceeded to bring her to the bedroom. Defendant took the victim's cell phone to prevent her from calling 911. The victim was able to free her hands, but defendant grabbed her by her throat and threw her to the ground. Defendant digitally penetrated the victim while she laid on the ground. Soon thereafter, defendant inserted his penis into her vagina. The victim testified that this encounter was nonconsensual. Later that same day, the victim contacted defendant to discuss what transpired. She testified that she did not want to involve police because she wanted to keep her family together. Dissatisfied with the discussion with defendant, the victim contacted police a few hours later. During the phone call, the victim made statements about defendant stealing a motorcycle and how defendant raped her. This 911 call was admitted into evidence without objection.

-1-

Defendant first argues that he received ineffective assistance of counsel during the plea-bargaining process because defense counsel did not inform him of the potential sentence he faced if found guilty as charged and that he would have accepted the alleged plea of one year of incarceration had he known the full potential sentence. Determining whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court reviews findings of facts for clear error and questions of law de novo. *Id*. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016). Because we remanded for an evidentiary hearing,[1] we review the trial court's findings for clear error.

In order to receive a new trial on the basis of ineffective assistance of counsel, defendant "must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010) (quotation marks and citation omitted); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

A criminal defendant, as at trial, "is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). In demonstrating prejudice with respect to ineffective assistance of counsel in the plea-bargaining process, the " 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Id*. at 592, quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). If the alleged prejudice results from a defendant rejecting a plea offer and standing trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*., quoting *Lafler*, 566 US at 164.]

In this case, defense counsel admitted during the evidentiary hearing that he did not inform defendant of his minimum sentencing guidelines range. "The decision to plead guilty is the defendant's," and defense counsel must provide sufficient enough advice during plea negotiations to allow defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). Because defense counsel did

---

[1] See *People v Fox*, unpublished order of the Court of Appeals, entered February 8, 2019 (Docket No. 344159).

not advise defendant of his minimum sentencing guidelines range, defendant was unable to make an informed and voluntary choice between trial and the alleged one year of incarceration.

However, defendant cannot establish prejudice. We note that defendant's offer of proof by way of an affidavit from defense counsel raises the question whether defendant was ever offered one year of incarceration. First, at the evidentiary hearing, there was testimony that defendant was never offered such a plea. Second, and more curiously, defense counsel's affidavit has the language "one year in custody" stricken and handwritten above "a sentence of" the word "guideline." This suggests that defendant was offered a guideline sentence instead of one year of incarceration.

Notwithstanding, there is not a reasonable probability that defendant would have accepted the plea, whether the plea offer was for one year of incarceration or not. Throughout the entire trial and even at the evidentiary hearing, defendant adamantly maintained his innocence. Even during the evidentiary hearing, defendant testified that he "couldn't bring [him]self to plead guilty to something that [he] didn't do." The trial court determined that, because of defense counsel's and defendant's and his mother's testimonies about rejecting any plea offer because of defendant's innocence, there was not a reasonable probability that defendant would have accepted the plea without the clarifying effects of hindsight. Similar to *Douglas*, we can find no clear error in the trial court's determination.

Defendant also argues that he received ineffective assistance of counsel because defense counsel failed to object to inadmissible hearsay. Generally, this Court reviews claims of evidentiary error for an abuse of discretion. See *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). Unpreserved claims of evidentiary error are reviewed for plain error affecting defendant's substantial rights. See *People v Coy*, 258 Mich App 1, 12; 699 NW2d 831 (2003). Under this standard,

> [f]irst, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative). Moreover, reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. [*Id*. (citations omitted).]

MRE 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible. MRE 802. Under MRE 803(2), the exception for present sense impressions allows for the admission of a hearsay statement if three requirements are met:

> (1) the statement must provide an explanation or description of the perceived event, (2) the declarant must have personally perceived the event, and (3) the explanation or description must have been made at a time substantially contemporaneous with the event. [*People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014) (quotation marks omitted).]

In many, "if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." *Id*. (quotation marks and citation omitted).

In this case, although unclear, at least several hours passed from the time of the assault to the time the victim called 911. The victim testified that when she woke up later that afternoon after the assault, she contacted defendant to try and get a sense of what happened. Only after contacting defendant and not receiving the answers she sought did the victim contact police. Admittedly, the victim was unable to call police during the assault, or even soon thereafter, because defendant had her phone. However, when she awoke, she could have called police. We have recognized an allowance of time for a "statement made less than a minute or even several minutes after the event observed to qualify under [the present sense impression] exception." *People v Bowman*, 254 Mich App 142, 145; 656 NW2d 835 (2002). However, similar to *Bowman*, the statements made to police were not made "merely a few minutes after" the assault. See *id*. Instead, there was an indeterminate length of time between the assault and the 911 call, plus a conversation with defendant about what transpired. See *id*. "To call such an account a present sense impression is to rob the phrase of its meaning, and we will not interpret the language of this evidentiary rule in a sense so contrary to its fair and natural import." See *id*. at 145-146 (quotation marks and citation omitted). Therefore, we hold that the 911 call did not constitute a present sense impression.

Another exception to the general rule against hearsay is an excited utterance. MRE 803(2) allows for the admission of a hearsay statement when a "statement relating to a startling event or condition [was] made while the declarant was under the stress of excitement caused by the event or condition." There must be a (1) startling event, and (2) the resulting statement must be made while under the excitement caused by the startling event. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "The question is not strictly one of time, but of the possibility for conscious reflection." *Id*. at 551. Although the passage of time is a relevant consideration, "there is no express time limit for excited utterances." *Id*. The admissibility of such statements does not necessarily depend on the amount of time that elapsed since the startling event, but rather whether the declarant was still under the stress of excitement resulting from that event. *Id*. at 551-552.

In this case, there can be no question that the sexual assault was a startling event. According to the victim's testimony, she was unaware that defendant would be present in her home when she returned from her friend's house. Further, although she knew that it was defendant when he grabbed her, her testimony revealed that this encounter was unlike any that she had experienced with defendant before and that it was nonconsensual. Therefore, the relevant question is whether the victim was still under the stress of the assault when she contacted police several hours later. See *id*.

> Though the time that passes between the event and the statement is an important factor to be considered in determining whether the declarant was still under the stress of the event when the statement was made, it is not dispositive. It is necessary to consider whether there was a plausible explanation for the delay. [*Id*. at 551.]

Part of the victim's delay in contacting police can be attributed to the fact that defendant had her phone. Assuming the assault happened at midnight and lasted until 5:00 a.m., the victim would have been unable to contact police this entire time. Furthermore, the victim testified that

she then fell asleep. Although unclear at what time the victim woke up, it was sometime later on the afternoon of the assault. This would also serve as a plausible explanation for the victim's continued delay in contacting police. See *id*. It was not until after she woke up and contacted defendant that she contacted police. Again, it is unclear how much time had passed between when the victim woke up and when she contacted police. However, her testimony reveals that it was at least a few hours. She stated that when she finished contacting defendant, she "then pondered and thought about it, maybe, a few hours at most, and then decided that [contacting the police] would be the right course of action." "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule." *Id*. Although there are plausible explanations for the victim's delay in contacting police and making the statements, the victim's own testimony evidences that she "pondered and thought about it." This is the type of conscious reflection that our Supreme Court determined was the relevant question. It is a "continuing level of stress arising from the [startling event] that preclude[s] any possibility of fabrication." See *id*. at 553. While the victim was undoubtedly emotional during her call to 911, we cannot conclude that there was an "overwhelming influence" that lasted between her waking up and her disclosure of the assault to police. See *id*. at 552. Therefore, the statements do not qualify as excited utterances.

Still, the analysis cannot end there. After determining that the evidence was inadmissible, we must next determine whether the error affected defendant's substantial rights. We find that it did not. The admission of these statements did not amount to plain error because the admission of the statements was not outcome-determinative: there was other evidence that corroborated defendant's guilt. The jury still heard testimony from the victim about the assault and what transpired after the assault. "[T]he complainant's testimony can, by itself, be sufficient to support a conviction of CSC," *People v Szalma*, 487 Mich 708, 724; 790 NW2d 662 (2010), and "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented," *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Moreover, reversal is unwarranted because the admission of the victim's 911 call did not affect the fairness, integrity, or public reputation of the trial. See *Coy*, 258 Mich App at 12.

With regard to defendant's ineffective assistance of counsel claim relating to the statements, we hold that counsel was not ineffective. Defense counsel is afforded wide latitude on matters of trial strategy, and this Court will not substitute its judgment for that of defense counsel, review the record with the added benefit of hindsight on such matters, or second-guess defense counsel's judgment on matters of trial strategy. See *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). The record demonstrates that defense counsel refrained from objecting to the admission of the 911 call because of trial strategy. Specifically, defense counsel stated that he believed the call indicated that the victim was just trying to "strike back" at defendant and that, because defendant did not give the victim what she wanted by way of remaining at the house, she decided to call 911. Defense counsel believed that the discussion about the motorcycle at the beginning of the call would negatively affect the victim's credibility. We are not left with a definite and firm conviction that the trial court erred in determining that defense counsel was not ineffective. See *Head*, 323 Mich App at 539.

Lastly, defendant argues that the prosecution engaged in prosecutorial misconduct. We disagree. We review unpreserved claims of prosecutorial misconduct for plain error. See *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. [*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (quotation marks and citation omitted).]

Defendant challenges the prosecutor's comments during her opening statement and closing argument about the victim being tied up and defendant's inability to "get hard." With regard to the prosecutor's statements about the victim being tied up, defendant asserts that there was no evidence to support such statements. On the contrary, there was ample evidence by way of testimony from both the victim and defendant about defendant attempting to tie the victim's hands during the assault. Although later testimony revealed that the victim was not fully tied and eventually released herself from her constraints, there was evidence of which the prosecutor could reasonably infer that the victim's hands were tied. See *Dobek*, 274 Mich App at 66. Therefore, defendant's reliance on the overall fact that the victim's hands were ultimately untied is misguided because testimony supported that defendant at least attempted to tie her hands.

However, the prosecutor's comments about defendant's inability to get an erection was improper. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich app at 241. The record does not support any type of finding that defendant was unable to become erect during the assault. There was, however, evidence of penile and digital penetration of the victim by defendant. Therefore, the prosecutor's comments about defendant not being "actually hard" and defendant getting angry because "he couldn't get hard" were improper. However, reversal for a new trial is not required. Defendant cannot establish plain error affecting his substantial rights as a result of the prosecutor's comments. We find that the comments about defendant's inability to get an erection were not outcome-determinative.

Affirmed.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Michael J. Riordan