*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 19, 2024

Plaintiff-Appellee,

v

No. 364776
Oakland Circuit Court
LC No. 2020-273662-FH

JESEN BERNARD CROSKEY,

Defendant-Appellant.

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (victim 13 to 15 years of age, defendant five or more years older). Defendant was sentenced, as a second habitual offender, MCL 769.10, to 183 days in jail, and five years' probation. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant's assault of then 15-year-old complainant; he was 39 years old at the time. On July 20, 2019, at approximately 11:00 p.m., complainant was visiting the residence of defendant's daughter, SD—complainant's best friend. The two were planning on spending the night at the home of defendant's cousin, EC, whom the minor children considered an "aunt," to attend church the next morning. Defendant, SD, and complainant entered defendant's car to drive to EC's residence. Defendant was in the driver's seat and SD was in the front passenger seat. Complainant was sitting in the middle of the rear passenger seat, with a giant stuffed brown teddy bear to her left, behind the driver's seat. SD, however, testified that complainant was initially sitting immediately behind SD in the right rear passenger seat.

Soon after the parties got into the car, defendant, while in the driver's seat, turned toward the rear passenger area, reached out with his arm, and rubbed complainant's left upper thigh for a

-1-

few seconds.[1] Complainant recalled that it was very quick, and thought maybe defendant was just trying to move the teddy bear. When defendant noticed the shock on complainant's face, defendant moved the bear. Complainant contacted her friend, FK, over Snapchat because complainant trusted FK, and FK was a victim of similar conduct by a different adult. At approximately 11:46 p.m., complainant texted FK that she was "trying not to freak out," told FK not to say anything, and that defendant looked at her, touched her, and acted like he was just moving the bear. FK told complainant to go home, and to tell SD, or FK would tell SD's mom. Complainant replied, "No, it's fine," because she was concerned how her response would affect the relationship between SD and defendant.

Approximately 20 to 30 minutes later, when the parties stopped at a restaurant drive-through, defendant placed his hand on complainant's left inner thigh, and complainant pushed defendant's hand away, but defendant moved his hand to complainant's outer thigh. Defendant's hand was approximately 3 or 4 inches below complainant's waist. Complainant pushed defendant's hand for the second time, and moved all the way to the right of the back seat. A few moments later, the food arrived. After complainant moved, defendant whispered statements while attempting to make eye contact with complainant through the rearview mirror. Complainant attempted to catch SD's attention by kicking her seat; however, SD did not respond as she was on her phone and there was loud music playing.

After the parties arrived at EC's residence, complainant, defendant, and SD went in the kitchen to eat their food. EC and her children were sleeping in the living room. SD left the kitchen to retrieve her phone charger from the car. During SD's absence, defendant turned to complainant, stating, "It's not what it looks like, it's not what it looks like. Come here—no. Come on, come on." Complainant stepped away from defendant, and could not make eye contact. SD reentered the home, defendant left, and SD noticed something was wrong with complainant. Complainant could not verbally express what upset her, but showed SD the messages that she sent to FK saying defendant touched her. SD contacted her mother.

SD's mother awoke to a phone call from SD requesting she pick up the children from EC's residence. The children were crying and distraught, but did not disclose what happened. SD's mother went to EC's residence, and complainant and SD got into her vehicle and started to cry. SD's mother repeatedly asked what happened, and complainant eventually revealed that defendant touched her. SD's mother went to the police station, where the children provided statements, resulting in the underlying charge against defendant. Following a one-day jury trial, defendant was convicted of CSC-IV, and sentenced. This appeal followed.

## II. PRIOR BAD ACTS

Defendant first argues that the trial court abused its discretion when it permitted the prosecution to elicit testimony from complainant regarding a prior bad act involving defendant,

---

[1] While complainant advances that defendant improperly touched her twice, once while parked in front of SD's residence, and a second time while the parties were at a restaurant drive-through, the underlying CSC-IV charge only pertains to the latter incident.

SD, and complainant shopping for homecoming dresses because the prosecution failed to provide notice for its admission and the related testimony was irrelevant and so overly prejudicial that it violated defendant's due-process right to a fair trial. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). During the one-day jury trial, defense counsel objected to the admission of complainant's testimony regarding the dress-shopping incident under MRE 404(b); however, defense counsel did not advance any argument regarding its relevance or prejudicial nature. Accordingly, any argument related to the admission of complainant's contested testimony under MRE 404(b) is preserved for appellate review, but any contention regarding the testimony's relevance or resulting prejudice is unpreserved.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion[,]" and such decisions "will not be disturbed unless that decision falls outside the range of principled outcomes." *Thorpe*, 504 Mich at 251-252 (quotation marks and citations omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. at 252. "[I]f the [nonconstitutional] issue is preserved, the defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard." *Id*. When a decision regarding the admission of evidence involves a preliminary question of law, such as whether a rule of evidence permits admission of the evidence, we review that issue de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010).

"[W]hen issues are unpreserved, this Court must review the unpreserved claim for plain error affecting defendant's substantial rights." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 5 (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020) (quotation marks and citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (quotation marks and citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted).

Generally, evidence that a defendant committed a prior bad act is inadmissible to prove a propensity to commit such acts. *People v Galloway*, 335 Mich App 629, 637; 967 NW2d 908 (2020). For example, MRE 404(b) permits the admission of evidence of other acts to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident," but prohibits such evidence for propensity purposes.[2]

_____

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. We rely on the version of the rules in effect at the time this matter was decided, which was November 2022.

-3-

For other-acts evidence to be admissible under MRE 404(b)(1), the proponent of the evidence must show: "(1) that the other acts evidence is for a proper purpose (other than to show character and action in conformity therewith), (2) that the evidence is relevant to an issue of fact that is of consequence at trial, and (3) that, under MRE 403, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009).

During complainant's trial testimony, the prosecution inquired whether complainant interacted with defendant before the subject incident. Complainant disclosed that she previously interacted with defendant on three occasions as he was SD's father, but they "never really talked." When asked whether complainant's prior interactions with defendant caused her concern, complainant shared, "Honestly, I always had a bad feeling in my gut but I never wanted to say anything because that was my best friend, I'm not going to—you know, it's her family, I just kept it to myself." Complainant opted to remain silent regarding her feelings toward defendant because she did not want to jeopardize SD's budding relationship with her father. The prosecution subsequently probed whether defendant previously advanced statements or acted in a way that "created some bad feelings" for complainant. Complainant responded:

> It was one time that we went to the mall and it was for like a school event, [SD's], like homecoming, and we were trying on dresses. And I remember he kept complimenting on the dress very weirdly and he ended up buying the dress for me and telling me how I looked really good in it. And I just got really bad vibes from that.

When the prosecution asked whether complainant disclosed the dress-shopping experience to another person, defense counsel objected under MRE 404(b), to which the trial court replied that MRE 404(b) was inapplicable.

The trial court did not abuse its discretion when it permitted the prosecution to elicit testimony from complainant regarding the dress-shopping incident. Fundamentally, the contested testimony involved defendant's allegedly improper compliments toward complainant while she was dress shopping with his daughter, as opposed to any affirmative wrong, act, or crime on defendant's part involving complainant or any other party. See contra *Galloway*, 335 Mich App at 645 (noting a woman's testimony detailing that the defendant had strangled and attempted to rape her as she was jogging through the woods in a park about three months before the female complainant disappeared constituted inadmissible other-acts evidence under MRE 404(b)); see also *People v Jackson*, 498 Mich 246, 262-265; 869 NW2d 253 (2015) (testimony of the complainant's aunt delineating the defendant's previous sexual acts with parishioners, who were above the age of consent unlike the complainant, fell within the scope of MRE 404(b)). Furthermore, complainant's testimony was in response to the prosecution's questions addressing complainant's previous interactions with defendant, and whether defendant exhibited any concerning behavior during their prior encounters, as opposed to an overt attempt to advance improper testimony.

Complainant expressed that she consistently maintained a "bad feeling" around defendant, but she chose to remain silent because complainant did not want to ruin her relationship with SD. Complainant clarified that these negative emotions arose when she was shopping with SD and

-4-

defendant for homecoming dresses, and defendant was "very weirdly" complimenting complainant about her dress. Despite defendant's contentions, complainant's recollection of the dress-shopping experience with defendant does not fall within the scope of MRE 404(b), as complainant's testimony detailed vague statements made by defendant as opposed to detailing defendant's previous acts, and explained why complainant believed defendant had a "bad vibe." See *id*. at 262 ("[B]y its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference. Correspondingly, acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b).").

Defendant further argues complainant's testimony pertaining to dress shopping was irrelevant and highly prejudicial under MRE 403, as the challenged statements were deliberately inserted into the proceedings to establish that defendant had a propensity to improperly interact with minors. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 402. Thus, to be admissible, the proponent of the evidence must first establish that the evidentiary item is relevant under MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if relevant, evidence may be excluded if the "probative value" of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

While defendant advances that complainant's testimony regarding the dress-shopping event was irrelevant, the underlying matter concerned defendant's criminal sexual conduct toward complainant. Accordingly, the nature of the relationship between the two, in addition to defendant's "weirdly complimentary statements" toward complainant before the subject incident, were critical to the jury's evaluation of the witness's credibility. Furthermore, the shopping incident was relevant to the jury's determination of whether the element of intent inherent in the CSC-IV offense was established, as the prosecution was required to demonstrate that defendant intentionally touched complainant for a sexual purpose; however, defendant contended the "touching" was accidental. The evidence was relevant as to any possible "grooming" behavior of defendant toward complainant. Additionally, the challenged testimony was not overtly prejudicial, as complainant did not describe any inherently egregious conduct by defendant that would inflame a jury to improperly convict defendant of the CSC-IV offense. "MRE 403 is not intended to exclude 'damaging' evidence because any relevant evidence will be damaging to some extent." *People v Baskerville*, 333 Mich App 276, 287; 963 NW2d 620 (2020). "Rather, MRE 403 excludes only *unfairly* prejudicial evidence, meaning there is a serious danger that the jury would give evidence with relatively little logical relevance undue weight[,]" or if the contested evidentiary item "would tend to arouse the jury's emotions to a degree that would preclude proper consideration of the actual merits of the case." *Id*. at 287-288. It is highly doubtful that complainant's brief testimony detailing her experience dress shopping with defendant and SD would lead to such a result. In light of the circumstances, defendant's evidentiary challenges lack merit, and he is not entitled to relief.

### III. PROSECUTORIAL MISCONDUCT

Defendant next argues that he was deprived of his right to a fair and impartial trial when the prosecution improperly vouched for complainant's credibility, denigrated defendant and defense counsel, and undermined defendant's presumption of innocence to obtain a favorable verdict. We disagree.

Defendant did not contemporaneously object and request a curative instruction for the alleged prosecutorial misconduct; therefore, this issue is not preserved for appellate review. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). "Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). " 'Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error.' " *Mullins*, 322 Mich App at 172, quoting *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

"A prosecutor is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *People v Evans*, 335 Mich App 76, 89; 966 NW2d 402 (2020) (quotation marks and citation omitted). Thus, the test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). This Court reviews claims of prosecutorial misconduct on a case-by-case basis, "examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003) (quotation marks and citation omitted).

"[T]he propriety of a prosecutor's remarks will depend upon the particular facts of each case." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). It is well established that a prosecutor may not "urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237. By interjecting such prejudices to the jury, a prosecutor inappropriately asks the jury to convict the defendant not on the basis of his or her individual guilt or innocence, but because of the necessity to protect the community from persons like the defendant and from crimes such as those the defendant is accused of perpetrating. See *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) ("[a] defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence."). Moreover, "[a] prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Appeals to the jury to sympathize with the victim constitute improper argument. *Unger*, 278 Mich App at 237. However, prosecutors are generally afforded great latitude regarding their arguments and conduct at trial. *Id*. at 236.

During closing argument, the prosecution delineated the elements of the CSC-IV charge against defendant, and the relevant facts pertaining to the subject incident. Defense counsel subsequently responded by highlighting the distinctions between complainant's trial testimony and

her preliminary examination testimony, noting there were several details complainant was unable to recall concerning defendant touching her shin and whether SD was leaning over defendant to order at the drive-through, thereby blocking defendant from reaching backward to touch complainant. Defense counsel further asserted that "the mechanics" of how defendant was able to reach complainant in the rear passenger seat were suspect. Defense counsel additionally stated that in judging witness credibility, there was a lot of emotion based on what complainant disclosed. Defense counsel asserted that complainant repeatedly failed to disclose what transpired to any other person, except FK, despite her close relationship with SD and complainant's mother, arguing:

> But the fact of the matter is, all of the people, if we are to believe [complainant] that she was so scared and so frightened and such a panic attack and this and that, all of the people that she could have immediately told that could have helped her she did not. Instead, she—she sends this text. He's trying to touch me. She doesn't say he touched me once. She doesn't say he touched me twice.

Defense counsel reiterated the discrepancies between complainant's testimonies, informing the jury that this was not her first time testifying.

> In its rebuttal argument, the prosecution responded by stating:

> There's a saying in law school that if you don't have the facts you argue the law. And [if] the law is not on your side, you argue the facts. And then when you don't have the laws or the facts on your side, you get up and you stomp on the table, blame everyone else. That is victim blaming. That is excusing the defendant's behavior.

> [Defense counsel] gets up, reads from [the] preliminary exam transcript over and over again saying oh, do you remember this, do you remember this little bitty question. That's a strategy.

> What motivation does [complainant] have, her family, all the witnesses to come up three and a half years later and just to make this all up? There's no motivation to lie. There's none.

> And [defense counsel] asks questions, well, did you talk in the hall, like this is some grand conspiracy. It's not. We're here because of the defendant's actions, the defendant's sexual touching of a 15 year old girl. That's why we're here. And we're also here because, again, I have to prove the three elements and those were met.

> And I show exhibits and PowerPoints. Because when people get up here and pound on the table and victim blame, we don't lose sight of the real story.

The prosecution further argued that while defense counsel repeatedly critiqued complainant's failure to initially disclose what transpired to her mother or SD, "[i]n [complainant's] mind, a 15 year old girl at the time, there are no good options. . . . What do you expect [her] to do? Again,

it's victim blaming. That's all it is." The prosecution closed by analogizing the presumption of innocence of a defendant undergoing criminal proceedings to a "cloak of innocence, shroud around them throughout the entirety of the trial[,]" and asserted, "[a]nd in this case that cloak has been removed and we all see the defendant for exactly what he is. He's guilty. He's guilty."

Defendant contends that the prosecution improperly vouched for complainant's credibility, denigrated defendant and defense counsel, and undermined defendant's presumption of innocence to obtain a favorable verdict. To support all of his claims, defendant cites the prosecution's rebuttal argument in which the prosecution characterized defense counsel's theory as "victim-blaming," and the prosecution asserted that complainant possessed no motive to lie. We conclude that the prosecution's contested statements were not inflammatory or demeaning, rather, the prosecution properly responded to defense counsel's critiques of complainant's credibility, and questioning of complainant's conduct during the subject incident. See *People v Fyda*, 288 Mich App 446, 462; 793 NW2d 712 (2010) ("The fact that the prosecutor employed colorful rhetoric does not make the response to [the defendant's] arguments disproportionate," rather, the prosecution's comments properly addressed the weaknesses of the defendant's theory); see contra *Evans*, 335 Mich App at 104 ("the cross-examination was replete with prosecutorial misconduct" when the prosecution accused the witness "of being a hypocrite, engaging in deceit, purposely appearing dense, lacking intelligence, and ignoring or hiding evidence to make her opinion more palatable to the jury.").

The prosecution did not use the term "victim-blaming" to mislead the jury as defendant advances; rather, the prosecution countered defense counsel's questioning of complainant's behavior throughout the underlying incident. In his closing argument, defense counsel argued that if complainant was "so scared and so frightened and such a panic attack and this and that," then complainant would have contacted a third party other than FK for further assistance. Defense counsel additionally highlighted minute discrepancies between details cited in complainant's preliminary examination testimony, which occurred approximately three years before the one-day jury trial, and complainant's recollection of the assault during trial. In response, the prosecution asserted, in its rebuttal argument, that defense counsel was attempting to shift the blame for the prohibited sexual contact onto complainant, by questioning her conduct, despite the fact she was a 15-year-old minor child at that time. See *People v Clark*, 330 Mich App 392, 435; 948 NW2d 604 (2019) ("it is not improper for a prosecutor to comment on the weakness of a defense theory."). While the prosecution asserted, "[a]nd then when you don't have the laws or the facts on your side, you get up and you stomp on the table, blame everyone else[,]" to support its "victim-blaming" contention, the prosecution is not obligated to use the "blandest" possible terminology and is not forbidden from engaging in hyperbole. *People v Blevins*, 314 Mich App 339, 355-356; 886 NW2d 456 (2016) (quotation marks and citation omitted).

Accordingly, the prosecution's remarks were proper commentary on the weakness of defendant's theory of the case, and the prosecution did not denigrate defense counsel or otherwise suggest that defense counsel did not believe his own client. Furthermore, when considered in context and as a response to defense counsel's closing argument, the challenged statements during rebuttal did not amount to commenting that defense counsel was intentionally trying to mislead the jury. See contra, *Unger*, 278 Mich App at 238 (stating, "the prosecution also clearly exceeded the bounds of proper argument when it suggested [] that defense counsel had attempted to 'confuse the issue[s]' and 'fool the jury' by way of 'tortured questioning,' 'deliberately loaded questions,'

and 'a deliberate attempt to mislead[,]' " as the challenged statements were not made during the prosecution's rebuttal argument).

Defendant further characterizes the prosecution's following statements as an improper vouching of complainant's credibility: "What motivation does [complainant] have, her family, all the witnesses to come up three and a half years later and just to make this all up?  There's no motivation to lie.  There's none."  Generally, the prosecution "may not vouch for the credibility of a witness by conveying to the jury that he [or she] has some special knowledge that the witness is testifying truthfully."  *Clark*, 330 Mich App at 434.  However, a "prosecutor may . . . argue from the facts that a witness is worthy of belief."  *Id*.  Furthermore, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes."  *People v Jackson (On Reconsideration)*, 313 Mich App 409, 426; 884 NW2d 297 (2015) (quotation marks and citation omitted).

During its rebuttal argument, the prosecution advanced that despite defense counsel's contrary contentions, the jury should determine complainant was credible because she, along with the remaining witnesses, did not have a reason to lie.  The prosecution never asserted it maintained special knowledge to determine that complainant, and the other witnesses, were telling the truth.  The prosecution merely encouraged the jury to consider the circumstances surrounding the witnesses' respective testimonies.  Furthermore, this Court has repeatedly opined that an argument related to why the jury should believe a certain witness on the basis of the facts admitted at trial is not equivalent to vouching.  See *Clark*, 330 Mich App at 434 ("The prosecutor may, however, argue from the facts that a witness is worthy of belief."); see also *Jackson*, 313 Mich App at 426 (providing that the prosecution was permitted to comment on two of its witnesses' credibility after defense counsel repeatedly attacked the witnesses' truthfulness because of their drug use).  This is particularly true in matters such as the instant case, when the ultimate decision of the jury comes down to a credibility contest concerning the parties' witnesses.  *Jackson*, 313 Mich App at 426.

Defendant lastly contends that the prosecution undermined defendant's presumption of innocence.  During its rebuttal argument, the prosecution closed by analogizing the presumption of innocence of a defendant undergoing criminal proceedings to a "cloak of innocence, shroud around them throughout the entirety of the trial[,]" and asserted, "[a]nd in this case that cloak has been removed and we all see the defendant for exactly what he is.  He's guilty.  He's guilty."  However, this Court has previously determined that practically identical statements are permissible.  See *People v Abraham*, 256 Mich App 265, 277; 662 NW2d 836 (2003) (the prosecution's statement, "[the defendant] walks in this courtroom cloaked with the presumption of innocence . . . .  But you see, it can be removed[,]" while illustrative, did not shift the burden to the defendant to prove his innocence, rather, "these statements are largely true—a defendant is presumed innocent, and, in fact, the prosecution can defeat the presumption with evidence").  Furthermore, while the prosecution is barred from injecting its personal beliefs or opinions of defendant's guilt, *People v Johnson*, 315 Mich App 163, 201; 889 NW2d 513 (2016), the prosecution asked the jury to find defendant guilty because the evidence presented in the matter lifted the "cloak of innocence" off defendant.  See *People v Lane*, 308 Mich App 38, 65; 862 NW2d 446 (2014) ("[t]he prosecutor did not state her personal opinion of [the defendant's] guilt or veracity, but rather indicated that the evidence showed that [the defendant] had lied to the police and was guilty.").

However, to the extent the prosecution's arguments were improper, relief is not warranted on appeal because, while defendant did not request a curative instruction or propose any particular language for an instruction, the trial court instructed the jury as follows:

> Every crime is made up of parts called elements. The prosecutor must prove each element of the crime beyond a reasonable doubt. The defendant is not required to prove his innocence or to do anything.

> \* \* \*

> Many things are not evidence and you must be careful not to consider them as such. I will describe some of the things that are not evidence.

> The fact that the defendant is charged with a crime and is on trial is not evidence.

> The lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that is supported by the evidence or by your own common sense and general knowledge.

> \* \* \*

> As I said before, it is your job to decide what the [facts] of the case are. You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a person says. You are free to believe all, none or part of any person's testimony.

> In deciding which testimony you believe you should rely on your own common sense and everyday experience. However, in deciding whether you believe a witness's testimony, you must set aside any bias or prejudice you may have and not be influenced by any witness's disability, gender, gender identity, race, religion, ethnicity, sexual orientation, age, national origin or socioeconomic status.

Jurors are presumed to follow their instructions. *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Defendant has not demonstrated that the curative instruction was insufficient to correct any prejudice caused by the prosecution's challenged statements. Accordingly, his right to a fair and impartial trial was not violated.

## IV. INADMISSIBLE TESTIMONY

Defendant argues that the trial court abused its discretion when it permitted SD's mother to provide hearsay testimony of statements made by complainant after the subject incident, and when it allowed complainant's mother to share why she was emotional during her testimony. We disagree.

Hearsay is a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); see also *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007) ("Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted"). The declarant is the person who makes the statement. MRE 801(b). A "statement" is defined, in pertinent part, as "an oral or written assertion," MRE 801(a), and the assertion must be capable of being true or false, *People v Propp*, 340 Mich App 652, 666; 987 NW2d 888 (2022). Hearsay is generally inadmissible, unless an enumerated exception applies. MRE 802.

During her testimony, SD's mother disclosed that she repeatedly asked the minor children, "what's going on," when she picked up complainant and SD from EC's residence after the subject incident. SD's mother testified that, while the parties were in the car, the following conversation occurred:

> [Complainant] said, [SD], I can't tell your mom, I need you to tell her. I said what happened. I immediately stopped the car. And the girls started crying and were very upset still. And I said what happened, someone needs to speak now and tell me what the hell is going on because I need top [sic]. Because you guys are way [too] upset for something just stupid to be [sic], you know, to be upset.

> * * *

> [The minor children] were going back and forth saying you have to tell, you have to tell. And I said well, one of you need to tell me what's going on. So that's when [complainant] finally said he touched—[defendant] touched me, [SD's] dad touched me.

SD's mother further provided that complainant disclosed "that the first time [complainant] thought [defendant] was just moving the teddy bear but then the second time he talked—he touched the leg, that he wasn't moving the teddy bear. So she didn't know what was going on."

The parties do not dispute that SD's mother's testimony detailing complainant's statements constituted hearsay. Rather, the parties contest whether the statements were admissible under any of the enumerated hearsay exceptions, specifically as a present sense impression under MRE 803(1). A "present sense impression" under MRE 803(1) is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." To qualify as a present sense impression, "(1) the statement must provide an explanation or description of the perceived event, (2) the declarant must have personally perceived the event, and (3) the explanation or description must have been made at a time 'substantially contemporaneous' with the event." *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014). MRE 803(1) "recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." *Id.* (quotation marks and citation omitted).

It is evident that complainant, as the declarant of the contested statements, described the events that she personally witnessed as the victim of the sexual contact. Accordingly, the pertinent issue is whether complainant's statements, which were advanced approximately two hours after

-11-

defendant touched complainant's thigh at the restaurant drive-through, may be considered "substantially contemporaneous" with the event. Because of the significant lapse in time between when the drive-through assault transpired and the arrival of SD's mother at EC's residence to pick up the minor children, complainant's statements may not be deemed "substantially contemporaneous" under MRE 803(1). See *People v Bowman*, 254 Mich App 142, 145-146; 656 NW2d 835 (2002) (the contested statement was "not made merely a few minutes after the conversation being related took place, but following a drive of an indeterminate length from one house to another," and, "[t]o call such an account a 'present sense impression' is to rob the phrase of its meaning, and we will not interpret the language of this evidentiary rule in a sense so contrary to its 'fair and natural import' ").

However, the challenged hearsay statements were still admissible, as the prosecution argues on appeal, under MRE 803(2) as excited utterances. "MRE 803(2) provides an exception to the hearsay rule for a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[,]" regardless of whether a declarant is available. *People v Jordan*, 275 Mich App 659, 668; 739 NW2d 706 (2007) (quotation marks and citation omitted). This exception "allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted). The requirements for an excited utterance are: (1) a startling event, and (2) the resulting statement is made while under the excitement caused by the event. *Id.* In the instant case, there can be no dispute that complainant's statements arose out of, and related to the circumstances of, a startling event—namely, defendant's unlawful "touching" of complainant. Complainant disclosed defendant's conduct to SD's mother approximately two hours after the underlying assault, and complainant maintained significant difficulties voicing what transpired because of her shock. See *People v Green*, 313 Mich App 526, 537; 884 NW2d 838 (2015) (the complainant's statements to her mother on the same day as her contacts with the defendant were admissible under MRE 803(2) because "[t]he statements were made within hours of [the] defendant leaving the apartment, so there was little time to contrive and misrepresent his actions").

Complainant testified that when SD's mother arrived to pick up the minor children from EC's residence, complainant was "distraught" and "felt like what had happened was not real. And I had just felt upset for my best friend because I knew that what I had to tell her I was going to ruin her relationship with the defendant." SD and SD's mother further testified that complainant was visibly distressed as she was bawling and hesitant to share details pertaining to the assault, and complainant remained in an emotional state even when she subsequently arrived at the police station, where complainant's mother saw complainant shaking and crying. Considering the circumstances, it is apparent that complainant was still under the stress or excitement caused by the event when she revealed to SD's mother that defendant "touched" her, and the contested hearsay statements were admissible under MRE 803(2).

Defendant further contests the prosecution's questioning of the emotional state of complainant's mother during her testimony, contending that her response was irrelevant and highly prejudicial as it did not have any tendency to make the existence of any pertinent fact more or less probable, but rather, the prosecution elicited her testimony to evoke sympathy from the jury.

-12-

During the testimony of complainant's mother, the prosecution asked her why she was emotional while testifying. Complainant's mother replied:

> Yeah. She's my daughter. Of course. Of course I have to be like that because she's my daughter and she got hurt. Her feelings. She is—she's never gonna like trust a guy in her life. And any time I take her like with me any— anyplace and she sees like similar faces, she feels like she's scar[ed] and she goes inside the car. She does not want to be in a place like there's people [that] look[] like this guy right there.

This challenged testimony was admissible. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Washington*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165296); slip op at 6 (quotation marks and citation omitted). The significance of the requirement of a face-to-face confrontation is that it permits the jury to observe the demeanor of a witness while testifying to assist the jury in evaluating the witness's credibility. Thus, as complainant's mother was noticeably upset during her testimony, the prosecution was within its rights to provide the jury with clarity regarding her demeanor, as the matter was relevant to determining the credibility of complainant's mother. Furthermore, her testimony was not overtly prejudicial. While complainant's mother expressed how defendant's conduct impacted herself and complainant, potentially evoking an emotional response from the jury, her statements were not the type that "would tend to arouse the jury's emotions to a degree that would preclude proper consideration of the actual merits of the case." *Baskerville*, 333 Mich App at 287-288. Additionally, the trial court instructed the jury, "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law. . . . [Y]ou must not let sympathy, bias or prejudice influence your decision." In light of the circumstances, the trial court did not abuse its discretion, or otherwise err, when it admitted the contested statements of SD's mother and complainant's mother.

## V. JURY INSTRUCTIONS

Defendant also argues that the trial court erred when it denied defendant's requested jury instruction of "Accident as Defense to Specific Intent Crime," M Crim JI 7.3a, thus violating defendant's constitutional right to a properly instructed jury and presentation of a defense. We disagree.

"Claims of instructional error are reviewed de novo." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021). "This Court reviews the trial court's determination whether a jury instruction is applicable to the facts of the case for an abuse of discretion." *Id*. (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012) (quotation marks and citation omitted). "[I]f an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citation omitted). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Montague*, 338 Mich App at 37 (quotation marks and citation omitted). "One of the essential roles of the trial court is to present the case to the jury and to instruct it on the applicable law with instructions that include . . . any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (quotation marks and citation omitted). "Although the trial court is not obligated to *sua sponte* present instructions regarding a defendant's theory, the trial court is obligated to give instructions on any theory or defense supported by the evidence upon request." *Ogilvie*, 341 Mich App at 35. However, "[a] defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013) (quotation marks and citation omitted). An affirmative defense does not negate the elements of a crime, but "seeks to justify, excuse, or mitigate it." *People v Aspy*, 292 Mich App 36, 49; 808 NW2d 569 (2011) (quotation marks and citation omitted). When reviewing a claim of instructional error, we examine "the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).

The standard jury instruction provided for offenses encompassed under MCL 750.520e(1), M Crim JI 20.13, titled "Criminal Sexual Conduct in the Fourth Degree," provides:

(1) The defendant is charged with the crime of fourth-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant intentionally [touched (*name complainant*)'s/made, permitted, or caused (*name complainant*) <u>to</u> touch (his/her)] [genital area/groin/inner thigh/buttock/(or) breast] or the clothing covering that area.

(3) Second, that this touching was done for sexual purposes or could reasonably be construed as having been done for sexual purposes.

Defendant requested the addition of M Crim JI 7.3a, titled "Accident as Defense to Specific Intent Crime," which states:

The defendant says that [he/she] is not guilty of [*state crime*] because [he/she] did not intend to [*state specific intent required*]. The defendant says that [his/her] conduct was accidental. If the defendant did not intend to [*state specific intent required*], [he/she] is not guilty. The prosecutor must prove beyond a reasonable doubt that the defendant intended to [*state specific intent required*].

In the instant case, after the close of proofs, the trial court cited the jury instructions it planned on providing the jury; neither party objected to the stated instructions. Defense counsel requested the addition of M Crim JI 7.3a. The court read the instruction aloud to the parties' counsel, and questioned whether defendant must testify for the instruction to apply. The

prosecution responded that defenses under Chapter 7 of the Michigan Model Criminal Jury Instructions "have to be elicited by evidence provided by the defense," which defendant failed to do because he did not testify. Defense counsel responded that the "accident defense" may be established through the prosecution's witnesses as "the argument or the defense is inadvertent or accidental touching." The court agreed with defense counsel's argument but it expressed, "[t]he problem is the first four words of the instructions, the defendant says that he is not guilty. So to me, that's inferring that he has testified[,]" as opposed to the instruction providing, "the defendant argues." The trial court ultimately denied defense counsel's request to add M Crim JI 7.3a to the jury instructions.

The trial court did not err when it denied defendant's requested jury instruction of "Accident as Defense to Specific Intent Crime," M Crim JI 7.3a. For the trial court to have instructed the jury on accident as requested by defendant, there must have been evidence that defendant acted without an intent to touch complainant's inner thigh, or the contested touch was not for sexual purposes, nor could it reasonably be construed as having been done for sexual purposes. To the extent defendant argues that an instruction on accident should have been given by the trial court because it was argued by trial counsel, the arguments of counsel do not constitute evidence, and therefore could not be considered when determining whether factual support exists for the instruction. Furthermore, even considering the evidence advanced by the prosecution, none of the witnesses expressly provided that defendant's conduct could have been "accidental." The substance of the testimonies focused on whether defendant was capable of reaching complainant in the rear passenger seat based on the placement of the parties in the car, and whether complainant was truthful based on her emotional reaction to the underlying events. We recognize, however, that complainant testified that after she arrived at EC's residence, defendant said to her, "[i]t's not what it looks like, it's not what it looks like. Come here—no. Come on, come on[,]" potentially supporting an accident defense.

Even assuming, arguendo, that the addition of the "accident as a defense" jury instruction was warranted based on the prosecution's presentation of proofs, defendant has failed to establish that the court's alleged failure to instruct the jury under M Crim JI 7.3a undermined the reliability of the jury's verdict. The requested jury instruction was duplicative as the elements of CSC-IV required the prosecution to establish that defendant intentionally touched complainant for a sexual purpose, meaning the jury would necessarily need to conclude that the touching was nonaccidental to convict defendant. Furthermore, the trial court expressly instructed the jury

> Now, the defendant is charged [with] criminal sexual conduct fourth degree. To prove this charge, the prosecutor must prove each of the follow[ing] elements beyond a reasonable doubt. . . .
>
> First, that the defendant intentionally touched [complainant's] genital area and/or groin and/or inner thigh or the clothing covering that area.
>
> Second, that this touching was done for sexual purposes or could reasonably be construed as having been done for sexual purposes.

* * *

The defendant's intent may be proved by what he said, what he did, how he did it or by any other facts and circumstances in evidence.

Moreover, defense counsel argued that defendant's conduct was inadvertent or accidental, such that the exclusion of the contested jury instruction did not prohibit the jury from examining defendant's intent. Defense counsel advanced, "The elements that we're talking about [here] is whether [defendant] intentionally touched this girl. And I don't believe the People are going to be able to prove that. Inadvertently touching an individual, that's not intentional. Accidentally touching is not intentionally." The jury did not appear conflicted or confused in reaching its verdict, as it determined defendant was guilty of CSC-IV after only 25 minutes of deliberations, such that further instruction was unwarranted. See *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019) ("When a jury indicates it cannot reach a unanimous verdict, a trial court may give a supplemental instruction . . . to encourage the jury to continue deliberating"). In light of the circumstances, defendant neglected to demonstrate that he is entitled to relief based on any purported jury-instruction error.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that he was deprived of effective assistance of counsel because his trial counsel neglected to consistently communicate with defendant regarding his trial strategy, and he failed to ensure EC would serve as a defense witness. Defendant further contends that his trial counsel was ineffective when he neglected to object during the prosecution's rebuttal argument despite its numerous inappropriate statements. We disagree.

To preserve an ineffective-assistance-of-counsel claim for appellate review, a defendant must move for a new trial or request an evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or file a motion for remand to the trial court for a *Ginther*[3] hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant preserved this issue for appeal by filing a motion to remand to the trial court, which was denied. *People v Croskey*, unpublished order of the Court of Appeals, entered January 17, 2024 (Docket No. 364776). Therefore, this Court's review is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *Heft*, 299 Mich at 80 (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. Clear error exists if the reviewing court "is left with a definite and firm conviction that the trial court made a mistake." *Abcumby-Blair*, 335 Mich App at 227-228 (quotation marks and citation omitted).

The United States Constitution and Michigan Constitution guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. For a defendant to succeed on an ineffective-assistance-of-counsel claim, the defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Id*. "Initially, a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks and citation omitted).

"The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id*. (quotation marks and citation omitted). This Court will not substitute its own judgment for that of counsel or use the benefit of hindsight in assessing the defense counsel's competence. *Unger*, 278 Mich App at 242-243.

Defendant first contends that his trial counsel failed to consistently communicate with defendant regarding his trial strategy and ensure that EC would serve as a defense witness. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). Regarding prejudice, "[w]ithout some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018).

Before the admission of the jury into the courtroom, the parties' respective counsels were discussing the proposed exhibit list with the trial court, when defendant asserted that he had a witness. Defense counsel responded that defendant "indicated to me an [EC], who was the aunt at the location, who may be called." When the court shared its concerns that defendant was attempting to introduce a witness on the day of the jury trial, defense counsel replied that a different attorney was previously assigned to the matter, and the trial court noted that the witness list remained fundamentally unchanged since February 2020. The court further stated that the prosecution maintained a legitimate objection to EC's late admission as a witness, and defense counsel was required to make an offer of proof or cite a relevant legal principle to justify her presentation. Defendant addressed the trial court stating, "I need another lawyer, please," to which the court responded, "That's not how it works, either." Defendant asserted:

> That's not how it works? He never called me. After—he—that this person is court-appointed. And I told him I had a court-appointed before. This guy never called me until it was time to come to court.

He never asked me about my witness. He never asked me did I have a witness and none of that. And it's been three years, I been going with this. I been missing jobs and getting fired for this situation. I'm getting frustrated.

The trial court then asked whether defense counsel failed to meet with defendant in the eight months since he was assigned the instant matter, and defense counsel asserted:

That's not true, your Honor. We have had discussion about this. We have talked about, you know, who we may call, who we may not. I've had conversations with him regularly.

I mean, you know, prior to each court date we've talked. And he has never indicated that to me up to this point. I mean, I have reviewed the discovery and discussed it with him and this individual was not an eyewitness to anything.

Defendant subsequently asserted that the contested assault occurred in EC's residence and she was an eyewitness to the event. Defendant conceded that he met with defense counsel at least four times; however, defendant was frustrated that defense counsel did not take notes during their conversations. Defense counsel expressed that he discussed discovery with defendant to ensure defendant maintained a copy of the pertinent files, and the two further reviewed the witnesses that were present during the subject assault. Defendant shared that he did not request EC's presence at the trial because defense counsel did not inform defendant that she was required to attend as a witness. The trial court opined that if EC's testimony was critical to defendant's matter, defendant should have contacted defense counsel and informed him accordingly, and "the fact that [EC] is not here is very telling because if you thought that you had someone to be called, today is [the] date and time set for trial. You could have made—if it's your aunt, you could have said could you be in court today?" Furthermore, the court instructed defendant on August 31, 2022 of his November 2022 jury trial date, and defendant should have assumed any witnesses would need to be present for their testimony.

Defense counsel subsequently moved for the admission of EC as a witness:

Your Honor, based on what my client is saying, he's indicating that he wanted this witness here. I don't think there would be any sort of unfair surprise or anything to the People if we were to add [EC] to the witness list. Even though she was not—she's always been an individual who the People know about . . . .

The prosecution responded that defense counsel failed to amend his witness list within the 30-day statutory requirement for the prosecution to be aware of EC's potential testimony, and while defendant alleged that "he doesn't know what's going on here," defendant maintained a previous CSC conviction, thus "[h]e knows how the system works." The court determined that the parties would proceed with trial as scheduled; however, defense counsel was permitted to make an "offer of proof and law that says it's appropriate to have [EC] as a witness, and [he] still [had] that opportunity [until] sometime this morning."

Following the prosecution's close of proofs, defendant reasserted that he wished to present EC as a witness, despite her absence from the courtroom. Defendant additionally clarified that EC

was his cousin, not SD's aunt. The court opined that as defendant and defense counsel were aware of the jury trial date, and neither party made an offer of proof or established the prejudicial effect of barring EC's testimony, the request to present EC as a witness was denied. Defendant continued to contest the court's decision regarding EC, in addition to critiquing defense counsel's performance, stating, "I clearly told [counsel] about the witness that I have. She's the eyewitness, she was not asleep as they keep saying she was asleep. She's the—pretty much a key witness to this case." The court noted defendant's concerns, reiterated that defendant was informed of the instant trial date months prior, and allowed defendant to meet with counsel to remedy the matter.

The parties reconvened, and defense counsel informed the court that he "need[ed] to make a motion regarding this witness," referring to EC, noting his confusion regarding whether EC was SD's aunt or defendant's cousin, because in their discussions, defendant did not clarify that the cousin he was referring to was EC, or identify her as the owner of the Pontiac residence. However, defense counsel simultaneously advanced that during his review of the relevant discovery, he believed that EC would present "extraneous testimony not regarding the incident at hand." Defense counsel expressed that if he knew the cousin defendant was requesting to serve as a witness was EC, he would "have filed a witness list adding her and requesting and subpoenaing her, having her appear." The court reiterated that defense counsel was assigned to the instant matter six months earlier, and stated, "if you're not having communications with your client, I don't know what to tell you." Defense counsel clarified that the fundamental miscommunication arose from the fact he was unaware that EC was actually the cousin defendant desired to have as a witness, as EC had been consistently referred to as SD's "aunt." Defense counsel further expressed, "[i]n this situation, considering my client's right to present a defense, if he feels that this witness is relevant, this is the person that he wants here, I would ask the Court to allow us an opportunity to—to present that witness to testify at this late stage."

The prosecution responded that defense counsel failed to cite any caselaw to support the addition of a witness this late into the proceedings, or provided any indication how her testimony would be beneficial to defendant's case. Defense counsel replied that EC was mentioned during the preliminary examination, and she was discussed by every witness during their respective trial testimonies. The trial court opined that despite defense counsel's contentions that he was unaware the cousin defendant was referring to was EC, defense counsel still knew "of her importance because you have been quoting that [preliminary] exam transcript all morning. So you knew about her importance. Whether or not your client ever stated to you, it's still your case to run." The court further expressed that it was required to enforce the applicable discovery rules against both parties fairly, and while it maintained discretion to add witnesses, "I think that discretion is much more limited when we're at 2:30 in the afternoon and this is the first time it's—well, [there's] still been no offer of proof, frankly, except the fact that she's been mentioned by the other witnesses." Defense counsel asked whether he was permitted to make an offer of proof, but the trial court denied his request.

Addressing defendant's contention that his counsel failed to effectively communicate with him, we first note that defendant conceded that he met with defense counsel at least four times. Defense counsel additionally provided that, in the six months he was assigned defendant's case, defense counsel contacted defendant before every hearing, in addition to discussing discovery with defendant to ensure he maintained a copy of the pertinent files, in addition to reviewing the witnesses that were present during the subject assault. However, despite their allegedly consistent

contact, there was a significant miscommunication regarding the identity of defendant's desired witness, EC, and her relationship to defendant. Defense counsel noted his confusion regarding whether EC was SD's aunt or defendant's cousin, because in their discussions, defendant did not clarify that the cousin he was referring to was EC, or identify her as the owner of the residence where he brought the children. However, defense counsel simultaneously advanced that during his review of the relevant discovery, he believed that EC would present "extraneous testimony not regarding the incident at hand." Defense counsel expressed that if he recognized the cousin defendant was requesting to serve as a witness was EC, he would "have filed a witness list adding her and requesting and subpoenaing her, having her appear." But defense counsel only advanced such a sentiment due to defendant's adamancy to have EC serve as a witness, as defense counsel expressed, "[i]n this situation, considering my client's right to present a defense, if *he feels* that this witness is relevant, this is the person that he wants here, I would ask the Court to allow us an opportunity to—to present that witness to testify at this late stage." Nonetheless, it is concerning that in the six months before the jury trial, defense counsel neglected to clarify the identity of defendant's proposed witness.

As the trial court aptly highlighted, regardless of defense counsel's contentions that he was unaware the cousin defendant was referring to was EC, defense counsel still knew "of her importance because you have been quoting that [preliminary] exam transcript all morning. So you knew about her importance. Whether or not your client ever stated to you, it's still your case to run." As the underlying matter was fundamentally a credibility contest, it was questionable for defense counsel not to, at minimum, investigate the witness defendant desired to present. It is evident that defense counsel did not even seek the name of defendant's proposed witness as defense counsel would have immediately recognized that EC was the "aunt" the minor children were referring to, and the owner of the home. See *Trakhtenberg*, 493 Mich at 52 ("Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.") (quotation marks and citation omitted). However, while defense counsel did not seek further information regarding the then-anonymous cousin defendant desired to present as a witness, defense counsel did investigate whether EC would be a viable witness, despite his lack of knowledge regarding her biological relationship to defendant. After his investigation, defense counsel expressed that he determined EC would present "extraneous testimony not regarding the incident at hand." See *id*. (the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy.").

Thus, while certain aspects of defense counsel's conduct were dubious, defense counsel conducted an adequate investigation of the underlying matter by inquiring into EC's knowledge of the subject, and recognizing all the parties present or relevant to the subject incident, i.e., complainant, defendant, SD, SD's mother, complainant's mother, FK, and EC. See contra *id*. at 54-55 (when the defendant's trial counsel failed to identify the factual predicate of each of the five charged counts or consult with key witnesses, and defense counsel's inadequate investigation contributed to her failure to sufficiently develop a defense, "defense counsel's performance was constitutionally deficient because a sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment."). Furthermore, even at trial, the prosecution, defense counsel, and the court were all under the impression that EC was SD's aunt, as opposed to defendant's cousin, until SD's mother and defendant clarified the matter during the proceeding.

This Court has broadly determined that "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Regardless of whether defense counsel categorized EC as defendant's cousin or SD's aunt, he ultimately determined her testimony was unnecessary after adequately investigating the underlying matter, and defendant did not indicate how EC's testimony was otherwise pertinent. Thus, without further information regarding the nature of the proposed testimony, as defendant has not made an offer of proof detailing what EC would testify about, we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness because defendant failed to establish the factual predicate for his claim.

To the extent that defense counsel's performance was deficient, defendant has failed to establish that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). While defendant asserted, during the trial proceeding, "I clearly told [counsel] about the witness that I have. She's the eyewitness, she was not asleep as they keep saying she was asleep. She's the— pretty much a key witness to this case[,]" defendant, both during trial and on appeal, neglects to indicate what EC could have testified about. See *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (because the "defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.") (quotation marks and citation omitted). The evidentiary record provides that EC's only first-hand knowledge would be her observations of complainant after the sexual contact had occurred. Multiple witnesses testified that EC was unaware of what transpired because she was asleep when complainant, SD, and defendant arrived at her home. Moreover, complainant detailed that while the minor children were waiting for SD's mother to arrive, EC woke up and she saw complainant and SD crying in her home, but neither minor child informed EC what occurred. Complainant just stated that she "needed to go home and [SD's] mom was coming to pick them up." SD's mother additionally shared that she did not attempt to enter EC's home to investigate further because she knew "[e]verybody was asleep in the house" and "[n]obody knew what was going on. [Defendant's] cousin [EC] didn't even know what was going on." See *Carll*, 322 Mich App at 703 ("Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial."). Ultimately, defendant failed to establish the factual predicate of his claim by making an offer of proof showing that EC would have testified favorably, and he failed to show a reasonable probability that the outcome of the case would have differed had it not been for defense counsel's failed strategy. Therefore, he is not entitled to relief.

Defendant further argues that his trial counsel was ineffective when he neglected to object during the prosecution's rebuttal argument despite its numerous inappropriate statements. However, for the reasons explained prior, because the prosecution's statements were proper, and the trial court's jury instructions were sufficient to dispel any possible prejudice, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Accordingly, defendant has not established a claim of ineffective assistance of counsel.

-21-

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle